664 So.2d 367 (1995)
STATE of Louisiana
v.
Oscar CARTER.
No. 94-KK-2859.
Supreme Court of Louisiana.
November 27, 1995.
*370 Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Gregory Garth Hangartner, New Orleans, for Applicant.
Kevin Vincent Boshea, New Orleans, for Respondent.
KIMBALL, Justice.[*]

ISSUE
We granted this writ application to determine whether defendant's right to counsel under either the federal or state constitutions was violated when a police officer interrogated defendant in jail, without the presence of an attorney, after defendant had been arrested and had made an initial appearance before a magistrate for the purposes of setting bond and appointment of counsel. We hold that where a defendant's federal and state constitutional right to counsel has attached, but where defendant has not asserted or invoked the right which had attached, he may validly waive his right to counsel during an interrogation provided the waiver is knowing, intelligent and voluntary. Because we find the defendant in the instant case in fact did not invoke or assert his right to counsel and subsequently made a valid waiver, we decline to revisit the issue of whether or not the right to counsel attaches at the initial appearance, as was previously held in State v. Hattaway, 621 So.2d 796 (La.1993). For purposes of this opinion, we assume arguendo that it does.

FACTS
On February 10, 1994, defendant was arrested pursuant to a warrant for a rape and battery alleged to have occurred the night before. On February 11, 1994, defendant appeared in Magistrate Court for the Parish of Orleans for an initial appearance, where bond was set. Defendant could not make bail. At the appearance, the judge also appointed the public defender to represent defendant. On February 13, 1994, the arresting officer, Officer Dickerson, met with defendant in jail, advised him of his rights, and asked if he wanted to make a statement. Defendant said he did and that he understood his rights. He signed a "Rights of Arrestee Waiver Form" which included the right to remain silent and the right to have an attorney present during questioning, and which notified defendant that any statements he might make could be used against him at trial. Defendant thereafter made a statement.
The trial judge later denied defendant's motion to suppress this statement. The fourth circuit court of appeal granted defendant's writ application and summarily reversed, stating: "Under State v. Hattaway, 621 So.2d 796 (La.1993) the State violated relator's constitutional right to counsel when it interrogated him following institution of adverse judicial criminal proceedings without first contacting his lawyer. Accordingly, we reverse the trial court's denial of relator's motion to suppress the confession. This matter is remanded to the trial court for further proceedings consistent with this ruling."[1] We granted the state's writ application *371 seeking review of this decision.[2]

THE LAW
This court in State v. Hattaway, supra, addressed several of the issues involved in this case. However, because we find the conclusions expressed therein on the above issues to have been based on a partial misapprehension of federal constitutional law in this area, we herein overrule it to that extent. Furthermore, inasmuch as the meaning of the right to counsel under La. Const. Art. 1, Sec. 13 in Hattaway was based almost entirely on that erroneous interpretation of federal law, we herein revisit in part the meaning and extent of the right to counsel under that constitutional article, concluding that on the issues of when the right attaches, at what subsequent stages does it exist, and whether it can be waived, the right to counsel under the Sixth Amendment and the right to counsel under La. Const. Art. I, Sec. 13 are coextensive in scope, operation, and application.

A. State v. Hattaway:

In Hattaway, this court held:
Article I, Sec. 13 of our state constitution guarantees the accused, at least after the initiation of adverse judicial criminal proceedings and the court's appointment of an attorney to assist him, the right to rely on counsel as the medium between himself and the state. Consequently, the state cannot, under such circumstances, obtain a waiver from the accused or otherwise communicate with him with respect to the offense that is the subject of the proceedings except through the medium of the defense counsel.
Hattaway, 621 So.2d at 798.
The court first held that a person's right to the assistance of counsel guaranteed by La. Const. Art. I, Sec. 13 attaches no later than a defendant's initial court appearance or first judicial hearing. This conclusion was based on the fact that at the time of the drafting and ratification of the 1974 Louisiana Constitution,

Gideon v. Wainwright [372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)] had constitutionalized an indigent's right to court-appointed counsel in state trials, Kirby v. Illinois [406 U.S. 682, 32 L.Ed.2d 411 (1972)] had fixed the attachment of the Sixth Amendment right to counsel at the initiation of accusatory or adverse judicial criminal proceedings, and the Louisiana legislature, by enacting La.C.Cr.P. art. 230.1, had established the initial court appearance or first judicial hearing to demarcate investigation and accusation, provide for the initiation of adverse judicial criminal proceedings, and fix the time for the appointment of counsel to assist indigents.
Hattaway, 621 So.2d at 808.
The court then noted that upon the attachment of the right to counsel, not all activity involving the defendant thereafter will constitute a "critical stage" or a "stage of the proceedings" triggering the right to presence of counsel at such a stage. Finding no evidence in the text or the drafting history of Art. I, Sec. 13 to indicate an intent to deviate from the Sixth Amendment test on what constitutes a "critical stage", this court looked to United States Supreme Court Sixth Amendment jurisprudence and adopted a "functional test" to determine at which stages after the attachment of the right to counsel under Art. I, Sec. 13 the accused would be entitled to the assistance of counsel. This determination involves an analysis of "whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice" and includes "any pretrial procedure occurring after the attachment of the right to counsel in which a meaningful defense or a fair trial could potentially be impaired if an uncounselled defendant were subjected to a confrontation by the state." Hattaway, 621 So.2d at 802 and 809. Therefore, even though the literal language of Art. I, Sec. 13 gives a defendant the right to counsel at "each stage of the proceedings", this court interpreted that phrase to include only those stages occurring after the attachment of the right to counsel which would be considered "critical stages" under the Sixth Amendment to the United States Constitution.
*372 The Hattaway court then addressed whether a defendant, after his right to counsel had attached, could waive the right to have counsel present at a critical stage. This court concluded that once the right to counsel had attached and "been asserted by the enrollment or appointment of counsel ... [no] state agent[] [could] communicate directly with the accused, without the knowledge and consent of his counsel, regarding the offense which is the subject of the adverse judicial criminal proceedings," and that any waiver of the right to counsel by defendant in such a case is per se invalid. Id. at 814. In essence, this court held that once the right to counsel had attached and an attorney had either been requested by defendant, or appointed for defendant, there could never be a valid waiver of the right to counsel by defendant. This conclusion was based on several considerations. Most importantly, this court found that the "text and history of Article I, Sec. 13 exhibit no intent to dilute the strictness of the standards previously established by the Supreme Court's Sixth Amendment jurisprudence governing the waiver of the right to assistance of counsel." Id. at 810. Therefore, after a review of what purported to be the relevant jurisprudence on the subject, the court concluded the United States Supreme Court had established "strong precedent" that "the state is prohibited from communicating with the defendant about the subject of the proceedings except through his legal representative, regardless of who initiated the confrontation or whether the elicitation was overt or covert." Id. at 809.

B. Analysis of Hattaway and Sixth Amendment Jurisprudence:
Because the conclusions in Hattaway were based in large part on a misapprehension of United States Supreme Court jurisprudence, we begin our analysis by reviewing the applicable federal jurisprudence concerning when the Sixth Amendment right to counsel attaches, at what subsequent stages it applies, and whether it can be waived. Thereafter, we will address whether the right to counsel protected under La. Const. Art. I, Sec. 13 differs from the Sixth Amendment right to counsel on these issues and, if so, consequently warrants a different result in this case.

1. The Initiation of Adversary Judicial Proceedings and Subsequent Critical Stages
As correctly noted in Hattaway, the Sixth Amendment right to counsel attaches only after the commencement of adverse judicial criminal proceedings. In the plurality opinion of Kirby v. Illinois, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972), the Supreme Court held the right to counsel does not attach prior to the "initiation of adversary judicial criminal proceedings whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." In an oft-quoted passage, the Court explained why the Sixth Amendment right to counsel does not attach until this point in the proceedings.
The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the "criminal prosecutions" to which alone the explicit guarantees of the Sixth Amendment are applicable.

Kirby, Id. at 689-90, 92 S.Ct. at 1882.
The Court has never waivered from this holding, and it has been reiterated time and again in subsequent jurisprudence.[3]
Even though the Sixth Amendment right to counsel may have attached, however, it does not exist to protect the defendant at *373 all post-attachment proceedings. The right exists only during those post-attachment, pre-trial confrontations which can be considered "critical stages". In United States v. Wade, 388 U.S. 218, 224, 87 S.Ct. 1926, 1931, 18 L.Ed.2d 1149 (1967), the Court described a critical stage as a "critical pretrial confrontation[] where the results might well settle the accused's fate and reduce the trial to a mere formality." See also United States v. Gouveia, 467 U.S. 180, 189, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146 (1984) (A "critical stage" is a pretrial proceeding where "the accused [is] confronted, just as at trial, by the procedural system, or by his expert adversary, or by both.") (quoting United States v. Ash, 413 U.S. 300, 310, 93 S.Ct. 2568, 2574, 37 L.Ed.2d 619 (1973)). Interrogation of the defendant, when occurring after the attachment of the right to counsel, is a critical stage of the proceedings entitling a defendant whose Sixth Amendment right has attached to the assistance of counsel during the interrogation. Michigan v. Jackson, 475 U.S. 625, 629-30, 106 S.Ct. 1404, 1407-08, 89 L.Ed.2d 631 (1986) (citations omitted) ("The arraignment [under Michigan law] signals `the initiation of adversary judicial proceedings' and thus the attachment of the Sixth Amendment, thereafter, government efforts to elicit information from the accused, including interrogation, represent `critical stages' at which the Sixth Amendment applies."); Brewer v. Williams, 430 U.S. 387, 400-01, 97 S.Ct. 1232, 1240, 51 L.Ed.2d 424 (1977); Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).
In sum, a defendant has a Sixth Amendment right to counsel only after adversary criminal proceedings have been initiated against him, and then, only at specific, critical stages of the proceedings. Consequently, the Sixth Amendment right to counsel is only an issue where adversary judicial criminal proceedings have begun against defendant and where defendant lacks assistance of counsel at a critical stage of the proceedings.[4]
Turning to the right to counsel protected under La. Const. Art. I, Sec. 13, the Hattaway court held the right to counsel under this constitutional provision attaches no later than a defendant's initial court appearance or first judicial hearing and thereafter applies to those pre-trial proceedings which would be considered "critical stages" under the jurisprudence interpreting the Sixth Amendment. It is clear interrogation of the defendant, when occurring after the attachment of the right to counsel, is a "critical stage" of the proceedings, or under Louisiana law, a "stage of the proceedings" entitling defendant to the presence of an attorney. We need not decide today however, whether we were correct in Hattaway that an initial appearance under La.C.Cr.P. Art. 230.1 marks the "initiation of adversary judicial criminal proceedings." *374 Even if defendant's right to counsel under the Sixth Amendment or La. Const. Art. I, Sec. 13 attached at his initial appearance, we find defendant made a valid waiver of his right to counsel prior to making the statement at issue herein.

2. Waiver of the Right to Counsel
We turn now to whether a defendant under the circumstances described above can waive his right to counsel under either the United States Constitution or the Louisiana Constitution of 1974. As stated earlier, in Hattaway we held that such a right could not be waived once defendant had retained or accepted by appointment an attorney to represent him. This conclusion was based on a review of United States Supreme Court jurisprudence which dealt only with covert interrogation of a defendant and the assumption that the framers of the 1974 Constitution intended to adopt this jurisprudence as the meaning of our right to counsel for all types of interrogation under La. Const. Art. I, Sec. 13. However, our analysis of this issue in Hattaway improperly failed to additionally consider the United States Supreme Court jurisprudence on waiver of the right to counsel during overt interrogation of a defendant. As such, to the extent that the broad language used in the Hattaway opinion dealing with waiver also applies to overt interrogation, that opinion is hereby overruled.
Contrary to the findings of the Hattaway court, the United States Supreme Court has not erected a "per se barrier to a represented defendant's waiving the right to counsel on his own with respect to incriminating statements deliberately elicited by the state after the commencement of accusatory or adverse judicial criminal proceedings." Hattaway, 621 So.2d at 803. The court's error can be explained by its focus only on cases dealing with covert interrogation of a defendant. By their very nature, covert interrogations involve situations where a defendant does not realize his statements are falling into the hands of the police to be used against him. Consequently, as will be explained more fully infra, waiver of the right to counsel is not even an issue because defendant is not given an opportunity to waive his right to counsel, is not aware he has a right to counsel at the time he makes the statements, and does not realize he is actually undergoing a form of interrogation by the police.[5] The United States Supreme Court noted the difference between the two forms of interrogation in U.S. v. Henry, 447 U.S. 264, 273, 100 S.Ct. 2183, 2188, 65 L.Ed.2d 115 (1980), a covert interrogation case.
An accused speaking to a known Government agent is typically aware that his statements may be used against him. The adversary positions at that stage are well established; the parties are then "arms' length" adversaries.
When the accused is in the company of a fellow inmate who is acting by prearrangement as a Government agent, the same cannot be said. Conversation stimulated in such circumstances may elicit information that an accused would not intentionally reveal to persons known to be Government agents. Indeed the Massiah Court noted that if the Sixth Amendment "is to have any efficacy it must apply to indirect and surreptitious interrogations as well as those conducted in the jailhouse."....
Moreover, the concept of a knowing and voluntary waiver of Sixth Amendment rights does not apply in the context of communications with an undisclosed undercover informant acting for the government.
See also Kuhlmann v. Wilson, 477 U.S. 436, 459, 106 S.Ct. 2616, 2630, 91 L.Ed.2d 364 (1986) ("As our recent examination of the Sixth Amendment issue in Moulton makes clear, the primary concern of the Massiah line of decisions is secret interrogation by *375 investigatory techniques that are the equivalent of direct police interrogation.") and Miller v. California, 392 U.S. 616, 626, 88 S.Ct. 2258, 2266, 20 L.Ed.2d 1332 (1968) (a covert interrogation case) ("At all events, Fisk was not put in the cell to discuss the weather, or console petitioner, or merely to provide her with companionship. Her presence itself was an inducement to speak, and an inducement by a police agent. While petitioner's statements to her were not obtained by coercive means, they certainly were not given, in light of the deception, through a knowing and intelligent waiver of petitioner's rights."); Tinsley v. Purvis, 731 F.2d 791 (11th Cir. 1984) ("In Massiah the incriminating statements were surreptitiously obtained from the defendant who was out on bail, therefore, there was no issue of whether the defendant had waived his right to counsel."); 1 LaFave & Israel, Criminal Procedure, Sec. 6.4, p. 473 (1984) ("Waiver is a possibility only when the defendant makes a statement to one known to be in a position adverse to him.") (citing United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980)).

Covert Interrogation Cases
A brief review of the cases relied on in Hattaway for the assertion that the Supreme Court has erected a "per se barrier" against waivers will reveal waiver of the right to counsel was never an issue in any of these cases due to the nature of the elicitation of the statements from the defendants. In Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), Massiah was indicted along with a man named Colson for conspiracy to possess and to distribute cocaine. Massiah retained a lawyer, pleaded not guilty, and was released on bail. Colson agreed to cooperate with government agents in their continuing investigation into Massiah's narcotics activity and allowed a transmitter to be installed under the seat in his car. Massiah and Colson subsequently held a lengthy conversation in the car, in which Massiah made several incriminating statements, while a government agent listened over the radio. The Supreme Court reversed Massiah's conviction on the ground that the incriminating statements were obtained in violation of Massiah's rights under the Sixth Amendment. The basic holding of Massiah is as follows:
[Massiah] was denied the basic protections of [the right to the assistance of counsel] when there was used against him at trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel.

Massiah, Id. at 206, 84 S.Ct. at 1203.
The other Supreme Court cases relied on in the Hattaway opinion were also clearly limited to situations involving covert interrogation. See Beatty v. United States, 389 U.S. 45, 88 S.Ct. 234, 19 L.Ed.2d 48 (1967) (hidden government agent overheard conversations between accused and informant); United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980) (defendant's cellmate, an informant for the FBI, was told by the government to pay attention to statements made by defendant); Maine v. Moulton, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (C1985) (defendant's co-indictee/accomplice agreed to cooperate with the police and wore a wire transmitter to record his conversation with defendant).
In Kuhlmann v. Wilson, 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986), on the other hand, the Court rejected defendant's argument his Sixth Amendment right to counsel had been violated. Defendant had been arrested and arraigned and was placed in a cell with someone who had previously agreed to act as an informant for the police. The cellmate had been specifically told he should only listen to the statements defendant made and should not ask any questions or initiate any conversations. Defendant made incriminating statements and was later convicted. The Court specifically held that the Sixth Amendment does not forbid admission in evidence of an accused's statements to a jailhouse informant who was "placed in close proximity but [made] no effort to stimulate conversations about the crime charged." Id. at 456, 106 S.Ct. at 2628.[6]
*376 The common thread of these cases is the use of covert investigatory techniques which are essentially the equivalent of direct police interrogation by the government agents in order to obtain statements from the defendant. The defendants were not aware they were making statements which would fall into the hands of the government and which could be used against them. Because it is a form of interrogation occurring after the right to counsel has attached, defendant has a right to counsel during the "interrogation." The nature of the covert interrogation, however, deprives defendant not only of the opportunity to exercise his right to counsel but also obviously precludes any discussion of waiver of that right. These cases, therefore, in no way hold, literally or by implication, that waiver of the right to counsel can never be valid once defendant is represented by counsel; only that waiver is not an issue in certain types of interrogation.

Overt or Direct Interrogation
Where covert interrogations are not involved, however, the United States Supreme Court has never held a defendant may not under any circumstance waive his Sixth Amendment right to counsel. In fact, prior to the case of Michigan v. Jackson, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), which created a prophylactic rule invalidating certain waivers of the right to counsel, but by no means erecting a per se rule invalidating all waivers, the Sixth Amendment right to counsel could, in all circumstances involving direct or overt interrogation, be waived by a knowing, intelligent and voluntary waiver, even in cases where defendant was represented by counsel.
Brewer v. Williams, 430 U.S. 387, 405-06, 97 S.Ct. 1232, 1243, 51 L.Ed.2d 424 (1977) involved the giving of a "Christian Burial Speech" to a defendant whose Sixth Amendment right to counsel had attached at an earlier arraignment and who was represented by counsel. After finding the speech to be the equivalent of direct interrogation of the defendant, a critical stage triggering the right to counsel, the Court concluded the state did not meet its burden of proving defendant had made a knowing, intelligent, and voluntary waiver of his right to counsel when he responded to the officers' comments. The Court noted, however, that it was not holding "that under the circumstances of this case Williams could not, without notice to counsel, have waived his rights under the Sixth and Fourteenth Amendments. It only held, as do we, that he did not." Brewer, Id. at 405-06, 97 S.Ct. at 1243. See also Patterson v. Illinois, 487 U.S. 285, 291, 108 S.Ct. 2389, 2394, 101 L.Ed.2d 261 (1988) ("If an accused `knowingly and intelligently' pursues the latter course [of facing *377 questioning without the aid of counsel] we see no reason why the uncounseled statements he then makes must be excluded at his trial."); Moran v. Burbine, 475 U.S. 412, 428, 106 S.Ct. 1135, 1144-45, 89 L.Ed.2d 410 (1986) ("It is clear, or course, that, absent a valid waiver, the defendant has the right to the presence of an attorney during any interrogation occurring after the first formal charging proceeding, the point at which the Sixth Amendment right to counsel initially attaches."); U.S. v. Henry, 447 U.S. 264, 273, 100 S.Ct. 2183, 2188, 65 L.Ed.2d 115 (1980) ("[T]he concept of a knowing and voluntary waiver of Sixth Amendment rights does not apply in the context of communications with an undisclosed undercover informant acting for the Government.... In that setting, Henry, being unaware that Nichols was a Government agent expressly commissioned to secure evidence, cannot be held to have waived his right to the assistance of counsel.").[7]
The following passage taken from Michigan v. Harvey, 494 U.S. 344, 352-53, 110 S.Ct. 1176, 1181-82, 108 L.Ed.2d 293 (1990) (emphasis added) (some citations omitted), makes clear that the Supreme Court has not erected a per se barrier against the validity of waivers made in response to interrogation, even where defendant is represented by counsel.
[N]othing in the Sixth Amendment prevents a suspect charged with a crime and represented by counsel from voluntarily choosing, on his own, to speak with police in the absence of an attorney. We have already held that a defendant whose Sixth Amendment right to counsel has attached by virtue of an indictment may execute a knowing and intelligent waiver of that right in the course of a police-initiated interrogation. Patterson v. Illinois, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988). To be sure, once a defendant obtains or even requests counsel as respondent had here, analysis of the waiver issue changes. But that change is due to the protective rule we created in Jackson based on the apparent inconsistency between a request for counsel and a later voluntary decision to proceed without assistance....
In other cases, we have explicitly declined to hold that a defendant who has obtained counsel cannot himself waive his right to counsel. See Brewer, [430] U.S. at 405-406, 97 S.Ct., at 1242-1243.... A defendant's right to rely on counsel as a "medium" between the defendant and the State attaches upon the initiation of formal charges and respondent's contention that a defendant cannot execute a valid waiver of the right to counsel without first speaking to an attorney is foreclosed by our decision in Patterson. Moreover, respondent's view would render the prophylactic rule *378 adopted in Jackson wholly unnecessary, because even waivers given during defendant-initiated conversations would be per se involuntary or otherwise invalid, unless counsel were first notified.
Although a defendant may sometimes later regret his decision to speak with police, the Sixth Amendment does not disable a criminal defendant from exercising his free will. To hold that a defendant is inherently incapable of relinquishing his right to counsel once it is invoked would be "to imprison a man in his privileges and call it the Constitution." Adams v. United States ex rel. McCann, 317 U.S. 269, 280, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942). This we decline to do.[8]
The Federal Circuit Courts of Appeals have also held a defendant whose Sixth Amendment right to counsel had attached could also subsequently make a valid waiver of his right to counsel during direct or overt interrogation. Although the circuits occasionally differed on the proof necessary for the government to show a knowing, intelligent and voluntary waiver by defendant, the circuits have never vacillated from their belief that a defendant can make such a waiver. U.S. v. Payton, 615 F.2d 922 (1st Cir.), cert. denied, 446 U.S. 969, 100 S.Ct. 2950, 64 L.Ed.2d 830 (1980); U.S. v. Mohabir, 624 F.2d 1140 (2d Cir.1980); U.S. v. Drummond, 354 F.2d 132 (2d Cir. En Banc 1965), cert. denied, 384 U.S. 1013, 86 S.Ct. 1968, 16 L.Ed.2d 1031 (1966); U.S. v. Cobbs, 481 F.2d 196 (3d Cir.1973), cert. denied, 414 U.S. 980, 94 S.Ct. 298, 38 L.Ed.2d 224 (1973); Felder v. McCotter, 765 F.2d 1245 (5th Cir.1985), 475 U.S. 1111, 106 S.Ct. 1523, 89 L.Ed.2d 921 (1986); U.S. v. Woods, 613 F.2d 629, 634 (6th Cir.), 446 U.S. 920, 100 S.Ct. 1856, 64 L.Ed.2d 275 (1980); Robinson v. Percy, 738 F.2d 214 (7th Cir.1984); Fields v. Wyrick, 706 F.2d 879 (8th Cir.1983); U.S. v. Karr, 742 F.2d 493 (9th Cir.1984); Tinsley v. Purvis, 731 F.2d 791 (11th Cir.1984).
Waiver of the right to counsel, in the absence of or without notice to counsel, has been held to be possible even in cases where the defendant is represented by counsel. Cobbs, supra at 199 ("The fact that a defendant has an attorney does not mean that law enforcement officials cannot procure a statement of any kind from the defendant without prior notice to, if not the consent of, the attorney."); Felder, supra; Woods, supra; U.S. v. Springer, 460 F.2d 1344 (7th Cir.), cert. denied, 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed.2d 125 (1972); U.S. v. Rodriguez, 888 F.2d 519 (7th Cir.1989); Coughlan v. United States, 391 F.2d 371 (9th Cir.), cert. denied, 393 U.S. 870, 89 S.Ct. 159, 21 L.Ed.2d 139 (1968). See also the Fifth Circuit Court of Appeals case of Montoya v. Collins, 955 F.2d 279 (5th Cir.), cert. denied, 506 U.S. 1036, 113 S.Ct. 820, 121 L.Ed.2d 692 (1992), which is specifically on point (The prior appointment of counsel at arraignment did not preclude the Fifth Circuit from finding defendant had made a valid waiver of his right to counsel during the interrogation, where defendant did not say anything during the appointment, failing to trigger the prophylactic rule of Michigan v. Jackson.), and Wilcher v. Hargett, 978 F.2d 872 (5th Cir.1992), cert. denied, ___ U.S. ___, 114 S.Ct. 96, 126 *379 L.Ed.2d 63 (1993) (applying Montoya to the same factual situation).[9]

Michigan v. Jackson:

Although the general rule is that a defendant can make a valid waiver of his right to the assistance of counsel during direct or overt interrogation, even in the absence of his counsel, the United States Supreme Court later created a "prophylactic rule" for deciding whether an accused who has "asserted" his Sixth Amendment right to counsel could subsequently be found to have waived that right. In Michigan v. Jackson, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), a consolidated case, the Court first noted defendants had a Sixth Amendment right to the assistance of counsel at their postarraignment interrogations, as they occurred after the "initiation of adversary judicial proceedings" by way of the arraignments, and because the interrogation represented "governmental efforts to elicit information from the accused", a critical stage triggering the right to counsel. The Court then turned to whether the defendants had made a valid waiver of the right to counsel. Adopting the reasoning of Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), which had announced an identical "prophylactic" rule in the Fifth Amendment context[10], the Court held that once a defendant's Sixth Amendment right to counsel has attached, if a defendant requests the assistance of counsel or "assert[s]" his right to counsel, then any subsequent waiver obtained pursuant to police-initiated interrogation will be presumed involuntary, regardless of whether the waiver was actually voluntary, knowing, and intelligent under the traditional analysis used by the Court in Brewer v. Williams. "We thus hold that, if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." Michigan v. Jackson, Id. at 636, 106 S.Ct. at 1411. Thus, a bright-line rule was created as an exception to the traditional rule allowing for the waiver of the right to counsel, such that where defendant has asserted his right to counsel, a later waiver in response to police-initiated interrogation is irrebuttably presumed invalid. The adoption of this prophylactic rule was based on the "supposition that suspects who assert their right to counsel are unlikely to waive that right voluntarily in subsequent interrogations." Michigan v. Harvey, 494 U.S. at 350, 110 S.Ct. at 1180.
Where defendant's right to counsel has attached by the mere fact of the initiation of adversary judicial criminal proceedings against him, but where defendant has not "asserted" this right, the Court will not presume that a subsequent waiver in response to police-initiated interrogation is invalid. The defendant who has not asserted his right to counsel after it has attached, although he does not get the enhanced protection of the prophylactic rule created in Michigan v. Jackson, still gets protection under the Sixth Amendment in that his waiver of the his right to counsel must be knowing, intelligent, and voluntary.
*380 Such was the holding of Patterson v. Illinois, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988), wherein the analysis to be used where a defendant whose Sixth Amendment right to counsel has attached but has not been "asserted" was made clear. In Patterson, defendant's Sixth Amendment right to counsel had clearly attached, as he was indicted prior to his questioning by the police. Noting that defendant had not, however, "retained, or accepted by appointment, a lawyer to represent him at the time he was questioned by authorities," and that he "at no time sought to exercise his right to have counsel present"[11] during the questioning, the Court held the prophylactic rule created in Michigan v. Jackson would not apply, and instead, the inquiry would turn simply on whether or not defendant had made a knowing, intelligent and voluntary waiver.
Had petitioner indicated he wanted the assistance of counsel, the authorities' interview with him would have stopped, and further questioning would have been forbidden (unless petitioner called for such a meeting). This was our holding in Michigan v. Jackson, supra, which applied Edwards to the Sixth Amendment context.... Our decision in Jackson ... turned on the fact that the accused "ha[d] asked for the help of a lawyer" in dealing with the police.... Preserving the integrity of an accused's choice to communicate with police only through counsel is the essence of Edwards and its progenynot barring an accused from making an initial election as to whether he will face the State's officers during questioning with the aid of counsel, or go it alone. If an accused "knowingly and intelligently" pursues the latter course, we see no reason why the uncounseled statements he then makes must be excluded at his trial.

Patterson, Id. at 291, 108 S.Ct. at 2394.
The fact of attachment of the Sixth Amendment right to counsel does not alone preclude the police from thereafter interrogating a defendant. Patterson v. Illinois. Nor does the mere fact of appointment of counsel for an indigent defendant alone preclude subsequent interrogation. Brewer v. Williams, Michigan v. Harvey, 494 U.S. at 352, 110 S.Ct. at 1181 ("but nothing in the Sixth Amendment prevents a suspect charged with a crime and represented by counsel from voluntarily choosing, on his own, to speak with police in the absence of an attorney."); Montoya v. Collins. Had the United States Supreme Court intended, as we mistakenly held in Hattaway, for the fact of appointment of counsel alone to be sufficient to preclude the police from thereafter interrogating defendant and obtaining a valid waiver, it could have so stated in Michigan v. Jackson, since in that case the Court noted that one of the two defendants had not only requested counsel but that a notice of appointment had been mailed to a law firm, effectively appointing counsel for that defendant. Instead, the Court declined the opportunity to hinge its rule invalidating waivers obtained pursuant to police-initiated interrogation on the fact of the appointment of counsel itself and instead chose to invalidate only those waivers obtained pursuant to police-initiated interrogation occurring after the defendant has made a "request for counsel" or an "assertion ... of his right to counsel", Michigan, Id. at 635, 106 S.Ct. at 1411.[12]

*381 C. The Coextensiveness of the Right to Counsel under La. Const. Art. I, Sec. 13 and the Right to Counsel under the Sixth Amendment
Having concluded that under the Sixth Amendment, a defendant who has appointed counsel but who has not otherwise asserted or invoked his right to counsel can make a waiver of his right to counsel in the absence of his attorney, we turn now to the issue of whether the same conclusion would be reached under La. Const. Art. I, Sec. 13.
The basic precept of the Hattaway opinionthat the right to counsel under La. Const. Art. I, Sec. 13 is similar in scope and operation to the right of counsel under the Sixth Amendment to the United States Constitutionis correct. This conclusion is supported not only by the language of the provision itself but also by the transcripts to the Louisiana Constitutional Convention of 1973, and the history of our state jurisprudence prior to the adoption of the 1974 Constitution.
First, the language used in the two provisions shows they are similar in scope, operation and function. The Sixth Amendment to the Federal Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defence." La. Const. Art. I, Sec. 13 provides that "[a]t each stage of the proceedings, every person is entitled to assistance of counsel of his choice" or to appointed counsel if indigent. The only obvious difference between the two is that the Sixth Amendment does not directly provide for the appointment of counsel if defendant is indigent. However, we do not believe the addition of this sentence in any way affects the interpretation of when the right to counsel under the article attaches and to which subsequent stages it applies, and under which circumstances it can be waived. Other than this, there is no other meaningful semantic difference in the language used under the two provisions. There is no evidence that the framers of the Louisiana Constitution and the people of this state who ratified it intended to completely abrogate the validity of waivers by defendants of their right to counsel where such waivers are otherwise permissible under the Sixth Amendment.
Not only does the facial similarity of the two provisions support the conclusion that the right to counsel under the two constitutions is coextensive, but the transcripts of the Louisiana Constitutional Convention of 1973 also support such a conclusion. Because Louisiana Const. Art. I, Sec. 13 does not dictate on its face when the right to counsel may attach, to which proceedings it would apply, and under what circumstances it can be waived, the transcripts are a relevant source of guidance in our determination of these issues.
The only pertinent discussion of this particular provision of Art. I, Sec. 13 located in the transcripts is the following:
Mr. Ginn: Mr. Stinson, it says, "at all stages of the proceedings," at all stages of the proceedings he must have a lawyer there. Does that mean that a sheriff or a district attorney could not talk to the man unless there was an attorney there? Is that what this implies?
Mr. Stinson: It says, "He shall be entitled." And I think that means that if a person says, "I'd rather not talk to you until I have the opportunity to see a lawyer," and they should explain to him before he answers any questions, and I believe that's federal and, also, state, that he has a right to an attorney to advise with him before he makes any statement. I think it's just a reenactment of what the present law is.
State of Louisiana Constitutional Convention of 1973 Verbatim Transcripts Vol. VI, p. 1132-33 (emphasis added).
The above statements, when combined with the fact that not one other comment was made regarding this provision (indicating there was no controversy over the plain meaning of the provision), reveal the framers of our constitution did not intend to give to defendants in this state any greater protection with respect to the right to counsel than was already afforded them under the Sixth Amendment to the federal Constitution. More particularly, there is nothing in the language of the provision or the transcripts which indicates any intent to foreclose a defendant's *382 ability to waive his Art. I, Sec. 13 right to counsel after counsel has been appointed to represent him.
Additional support for our concluding the provisions are similar in function can be found from the pre-existing state jurisprudence at the time of the framing of the 1974 Louisiana Constitution. Prior to the enactment of the 1974 Louisiana Constitution, this court consistently resolved arguments asserting a violation of the right to counsel under the Sixth Amendment and the Supreme Court jurisprudence interpreting same and rarely even mentioned the applicability of the right to counsel under 1921 La. Const. Art. I, Sec. 9.[13] Even when that provision was mentioned, Sixth Amendment jurisprudence was referred to as guidance in interpretation. See, e.g., State v. Webb, 307 So.2d 582 (La. 1975); State v. James, 305 So.2d 514 (La. 1974); State v. Allen, 251 La. 237, 203 So.2d 705 (1967); City of New Orleans v. Cook, 249 La. 820, 191 So.2d 634 (1966); State v. Rasheed, 248 La. 309, 178 So.2d 261, cert. denied, 384 U.S. 1012, 86 S.Ct. 1962, 16 L.Ed.2d 1031 (1965). Thus, if the framers of the 1974 Constitution and the people of this state who ratified it had intended to break from our previous jurisprudence and to create a right to counsel under our state constitution which would be broader in scope and extent than that protected by the Sixth Amendment, it seems to us they would have adopted language which more clearly evinced such an intent.[14]
Nor do we any longer agree with the argument implicit in Hattaway that because the Massiah line of cases pre-existed the 1974 Constitution and Brewer was not handed down until 1977, the framers intended for the holdings of the Massiah cases and not the Brewer case to apply to overt interrogations cases. While Brewer v. Williams was decided by the Supreme Court three years after the adoption of our Constitution and several of the opinions in the Massiah line were issued prior to 1974, the Brewer opinion did not create an exception to that line of cases. Later cases by the Court interpreting and applying Brewer made clear that Brewer was not an exception but, rather, merely recognized the prevailing rule that waivers of the right to counsel were permissible even where defendant had appointed counsel. Furthermore, looking only to the Massiah line of cases for an indication of whether or not a waiver of counsel by a represented defendant can be valid in an overt interrogation case simply because those cases may pre-date our constitution, as we did in Hattaway, is improper because waiver was never an issue in any of those cases.
Therefore, we conclude the right to counsel under Art. I, Sec. 13 of our constitution and the right to counsel under the Sixth Amendment are coextensive in scope, operation, and application.[15] The Sixth Amendment jurisprudence predating our state constitution, as well as later U.S. Supreme Court decisions explaining those cases, make clear that a defendant can validly waive his Sixth Amendment right to counsel under certain circumstances. We hold the same principle applies to the right to counsel under La. Const. Art. I, Sec. 13. Because our constitution can give no less protection than is afforded by the United States Constitution, we are additionally bound by the Court's holding in Michigan v. Jackson that once defendant's right to counsel has attached, if he makes an *383 assertion or invocation of this right, any waiver he would later make in response to police-initiated interrogation will be considered invalid, regardless of whether the waiver would normally meet the standards of a knowing, intelligent and voluntary waiver. Where defendant's right to counsel has attached but he has not made an assertion or invocation of his right to counsel, a waiver in response to police-initiated interrogation can be considered valid provided it is knowing, intelligent and voluntary.

APPLICATION OF THE LAW TO THE FACTS
Even if the right to counsel under the Sixth Amendment or La. Const. Art. I, Sec. 13 attached at his initial appearance, thus entitling defendant to the presence of counsel at the subsequent interrogation which constituted a critical stage of the proceedings, we find defendant made a valid waiver of his right to counsel prior to making the statement at issue herein.

A. Invocation or Assertion of the Right to Counsel
Unless the prophylactic rule set forth in Michigan v. Jackson applies, defendant can make a valid waiver of his right to counsel as long as it is knowing, intelligent and voluntary. Patterson v. Illinois, Michigan v. Harvey, Montoya v. Collins. In Michigan v. Jackson, the Court held the prophylactic rule was triggered only "after a defendant's assertion... of his right to counsel." 475 U.S. at 636, 106 S.Ct. at 1411. Later, in Patterson v. Illinois, the Court pointed out the defendant in that case was not entitled to the additional protection provided by the bright-line rule of Michigan v. Jackson, because he had not retained, or accepted by appointment, a lawyer to represent him at the time he was questioned by authorities nor did he later request counsel during the interrogation itself. In the instant case, defendant does not allege, nor do we find, that he requested counsel during the interrogation itself. Therefore, the issue to be resolved is whether defendant had previously asserted or invoked his right to counsel at the initial appearance. The entire colloquy of the appearance is as follows:
BY THE COURT:
Oscar Carter, Forcible rape, two counts, one count of sexual battery, one count of oral sexual battery, can you afford a lawyer?
BY THE DEFENDANT:
No.
BY THE COURT:
Public defender. Record.
BY MS. McMICHAELS:
Three misdemeanor arrests. We have no convictions on our computer. The state recommends $300,000 on each charge of forcible rape, $300,000 on oral sexual battery and $70,000 on the second degree battery.
BY THE COURT:
$75,000 on each count of forcible rape, $3,000 on second degree battery and $10,000 on oral sexual battery.
We do not believe the above constitutes an invocation or assertion of the right to counsel sufficient to trigger the application of Michigan v. Jackson. Something more than mere mute acquiescence in the appointment of counsel is necessary to show the defendant has asserted his right to counsel sufficiently to trigger the enhanced protection provided by Michigan v. Jackson's prophylactic rule. The above colloquy does not show defendant in any way indicated he wanted to deal with the police only through counsel. Some affirmative assertion of the right to counsel is necessary in order to give rise to the per se presumption in Michigan v. Jackson that a waiver, later made in response to police-initiated interrogation, could not possibly have been voluntary because of the earlier assertion of the right to counsel. In Patterson, the Court looked at whether defendant had ever "sought to exercise his right to have counsel present," whether defendant had "indicated he wanted the assistance of counsel," and, citing the opinion in Michigan v. Jackson, whether the defendant "ha[d] asked for the help of a lawyer in dealing with the police." 487 U.S. at 290-91, 108 S.Ct. at 2394.
A handful of federal circuit courts have also addressed what constitutes an invocation *384 or assertion of the right to counsel for purposes of triggering the prophylactic rule in Michigan v. Jackson. Most significantly, and directly on point, in Montoya v. Collins, supra, the Fifth Circuit was faced with a situation which is virtually identical to the one in this case. In Montoya, defendant was arrested and presented to the magistrate on the charge of murder. During this presentment, counsel was appointed to represent defendant. Later that day, he was questioned, waived his rights, and made a written statement. Defendant argued his subsequent conviction should be overturned because his right to counsel had been violated when the statement was taken from him without the presence of counsel. The court first noted that defendant's right to counsel attached upon his presentment before the magistrate. It then turned to the issue of whether the prophylactic rule of Michigan v. Jackson would apply to render his knowing, intelligent, and voluntary waiver otherwise invalid. Finding that the rule in Jackson is only invoked by the defendant's "assertion... of the right to counsel," the court explained an "assertion" requires an "actual, positive statement or affirmation of the right to counsel." 955 F.2d at 282. Because Montoya did not request counsel, answered negatively in response to the inquiry of whether he had or could afford an attorney, and then said nothing at all when the magistrate appointed counsel for him, he was found not to have asserted his right to counsel, and a subsequent waiver of his right to counsel in response to police-initiated interrogation could be valid.
For purposes of Jackson, an "assertion" means some kind of positive statement or other action that informs a reasonable person of the defendant's "desire to deal with the police only through counsel." This holding does not require a defendant to utter the magic words, "I want a lawyer," in order to assert his right to counsel. As Montoya points out, the Supreme Court "give[s] a broad, rather than a narrow, interpretation, to a defendant's request for counsel." But interpretation, whether broad or narrow, is only required when there is a "request" or an "assertion" in the first place....
.... Patterson said that Jackson applies when a defendant has "indicated he wanted the assistance of counsel," and Patterson characterized the "essence" of Jackson as "[p]reserving the integrity of an accused's choice to communicate with police only through counsel." If the rule of Jackson is invoked by a defendant's "indicating" his "choice," then it makes little sense to apply the rule to this case, where Montoya indicated nothing, expressed no choices, and made not the slightest response to the magistrate's intention to appoint a lawyer for him....
. . . . .
The prosecutor has met his burden of establishing by evidence that Montoya did not assert his right to counsel within the meaning of Jackson.

Montoya, 955 F.2d 279, 283, 285 (citations omitted).[16]
As previously discussed, we have found the right to counsel under the Sixth Amendment and the right to counsel under La. Const. Art. I, Sec. 13 are coextensive in this area; therefore, we logically hold the same requirements respecting invocation or assertion of the right to counsel set forth in Michigan v. Jackson, Patterson v. Illinois, and Montoya v. Collins apply with equal force under La. Const. Art. I, Sec. 13. Under that provision, police are only prevented from interrogating defendant and obtaining a waiver from him in cases where defendant makes a request for or asserts his earlier-attaching right to counsel. If he does not make such an invocation of his right to counsel, then a waiver obtained pursuant to police-initiated interrogation can be found to be valid.

B. Standard of Proof of Waiver of the Right to Counsel
Having concluded defendant is not entitled to the prophylactic protection provided *385 by Michigan v. Jackson, because he failed to assert or invoke his right to counsel by requesting counsel at any point after the attachment of his Sixth Amendment or La. Const. Art. I, Sec. 13 right to counsel but prior to his making a statement without counsel present, we turn now to the issue of whether defendant validly waived his right to counsel.
For the fruits of interrogations occurring after the attachment of the right to counsel at the initiation of adversary judicial criminal proceedings to be admissible in the prosecution's case in chief, the State must prove a voluntary, knowing, and intelligent waiver of the right to counsel. Michigan v. Harvey, 494 U.S. at 348-49, 110 S.Ct. at 1179. To show a knowing and intelligent waiver of the right to counsel, the State must prove "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); State v. Harper, 430 So.2d 627, 634 (La.1983). In other words, a defendant may waive his right to counsel "if he knows what he is doing and his choice is made with eyes open." Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942). A statement or confession is voluntary only if it was the product of defendant's uncoerced free will. The validity of a waiver is determined by carefully scrutinizing the particular facts and circumstances surrounding the case, including the background, experience and conduct of the accused. Harper, 430 So.2d at 634. Although this court defers to the findings of the trial judge as to whether the confession was knowingly, intelligently and voluntarily made, a trial court's conclusions will not stand unless supported by adequate evidence. State v. Brooks, 92-3331 p. 11 (La. 1/17/95) 648 So.2d 366, 372. Courts should indulge in every reasonable presumption against waiver. Brewer v. Williams, 430 U.S. at 404, 97 S.Ct. at 1242; Glasser v. United States, 315 U.S. 60, 70, 62 S.Ct. 457, 464, 86 L.Ed. 680 (1942).
In Patterson v. Illinois, the Court explained the focus, as to the knowing and intelligent elements of the inquiry, as follows: "Was the accused, who waived his Sixth Amendment rights during ... questioning, made sufficiently aware of his right to have counsel present during the questioning, and of the possible consequences of a decision to forgo the aid of counsel?" 487 U.S. at 292, 108 S.Ct. at 2394.[17] Thus, not only must the state show the defendant's choice to make a statement absent the presence of counsel was a voluntary, uncoerced one, but it must also show the choice was knowing and intelligent by showing defendant was aware of his right to have counsel present at the interrogation and understood the consequences of a decision to proceed without the aid of counsel.[18]
In Patterson, the Court discussed whether the giving of Miranda warnings immediately prior to the interrogation would sufficiently apprise a defendant of his right to have counsel present during the interrogation and the consequences of a choice to answer questions without counsel present such that defendant could not later complain his waiver was not knowing and intelligent. The Court stated:
First, the Miranda warnings given petitioner made him aware of his right to have counsel present during the questioning. By telling petitioner that he had a right to consult with an attorney, to have a lawyer present while he was questioned, and even to have a lawyer appointed for him if he could not afford to retain one on his own, Officer Gresham and ASA Smith conveyed to petitioner the sum and substance of the rights that the Sixth Amendment provided him.... There is little more petitioner could have possibly been told in an effort *386 to satisfy this portion of the waiver inquiry.
Second, the Miranda warnings also served to make petitioner aware of the consequences of a decision by him to waive his Sixth Amendment rights during postindictment questioning. Petitioner knew that any statement that he made could be used against him in subsequent criminal proceedings. This is the ultimate adverse consequence petitioner could have suffered by virtue of his choice to make uncounseled admissions to the authorities.
. . . . .
As a general matter, then, an accused who is admonished with the warnings prescribed by this Court in Miranda ... has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one. We feel that our conclusion in a recent Fifth Amendment case is equally apposite here: "Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law." See Moran v. Burbine, 475 U.S., at 422-423, 106 S.Ct. at 1142.[19]
Patterson, 487 U.S. at 293-94, 108 S.Ct. at 2395.
Thus, under Patterson, in the context of the waiver of the right to counsel in an interrogation, Miranda warnings given to a defendant prior to his making a statement will suffice to meet the state's burden of proving the statement was given as a result of a knowing and intelligent waiver of the Sixth Amendment and La. Const. Art. I, Sec. 13 right to counsel. Of course, the Miranda warnings alone do not answer the question of whether the waiver was valid, as the waiver must not only be knowing and intelligent, but also voluntary, in that it was an uncoerced product of the defendant's free will.
Defendant in the instant case does not argue his waiver was invalid because it was not voluntary, knowing, or intelligent. In order to make a complete adjudication on the record before us, however, we must reach this issue. Made part of the record is Detective Dickerson's report summarizing her interrogation of defendant on February 13, 1994. The report indicates defendant was "formally advised ... of his rights via Rights form # 208538 and asked if he wished to make a statement. Mr. Carter stated that he understood his rights and voluntarily signed the form." Also part of the record is the "Rights of An Arrestee or Suspect" form signed by defendant. The form states in part:
X You are under arrest for allegedViolation of Revised Statutes of 1950 as amended, ARTICLE 14:42.1 RELATIVE TO Forcible Rape Et. Al.
The possibility of your participation in other crimes is also under investigation. According to provisions in the Constitution of the United States and of the State of Louisiana it is my duty to inform you that:
I. You need not make any statements; that is, you have a right to remain silent;
II. Anything you say may be used against you in trial;
III. You have a right to consult with and obtain the advice of an attorney, before answering any questions;
IV. If you cannot afford an attorney, the court will obtain an attorney to represent you and advise you;
V. You have a right to have your attorney or an appointed attorney present at the time of any questioning or giving of any statement.
DO YOU UNDERSTAND WHAT I HAVE JUST READ TO YOU?
 X YES
 ___ NO
The form was signed by defendant and indicates he was apprised he had the right to *387 the assistance of counsel both before and during questioning. The form also informed defendant that anything he said may be used against him in trial. Therefore, defendant was advised of his right to counsel and the consequences of proceeding to answer questions without counsel. Consequently, under Patterson, the State has met its burden of proving defendant made a knowing and intelligent waiver of his right to counsel.
The next inquiry is whether the State has also proven a voluntary waiver of the right to counsel. Detective Dickerson's report indicates defendant told her he wanted to make a statement and that he did so voluntarily. The transcript of the suppression hearing reveals Detective Dickerson testified she met with defendant, asked if he would like to give a statement, and advised him of his rights. She testified she did not in any way force, threaten or coerce defendant into giving a statement. The record contains no evidence of any sort, nor even any allegation by defendant, that defendant was somehow coerced or pressured into making the statement or that the statement was not a product of his free will. Therefore, we conclude the State has met its burden of proving defendant's waiver of his right to counsel at the interrogation was also voluntary.

CONCLUSION
Once adversary judicial criminal proceedings have commenced against a defendant, he is entitled, by virtue of the Sixth Amendment and La. Const. Art. I, Sec. 13 to the assistance of counsel at all subsequent critical stages of the proceedings. Interrogation is a critical stage triggering this right. This means that the government is prohibited from deliberately eliciting statements from the defendant without an express knowing, intelligent and voluntary waiver by him of the right to counsel. This prohibition exists automatically and does not hinge on any assertion of rights by the defendant. Under Michigan v. Jackson, however, the Court presumed that "suspects who assert their right to counsel are unlikely to waive that right voluntarily in subsequent interrogations." Michigan v. Harvey, 494 U.S. at 350, 110 S.Ct. at 1180. This presumption led to the creation of a purely prophylactic, bright-line rule holding that waivers otherwise considered valid will be held invalid where they are made after defendant has asserted or invoked his right to counsel and makes a statement in response to police-initiated interrogation. Where defendant has not made an assertion or invocation of his previously attaching right to counsel, however, defendant is only entitled to the traditional right to counsel protection whereunder the state cannot deliberately elicit statements from him in the absence of counsel without an express waiver of the right to counsel. The State then has the burden of proving defendant's waiver was knowingly, intelligently, and voluntarily made.
Under the facts of this case, even if defendant's Sixth Amendment and La. Const. Art. I, Sec. 13 right to counsel attached at his initial appearance and the subsequent interrogation of defendant constituted a critical stage at which he was entitled to the assistance of counsel, the motion to suppress was properly denied. Because defendant did not assert or invoke his previously attached right to counsel in any way, he is not entitled to the enhanced protection afforded by the bright-line rule created in Michigan v. Jackson. The State met its burden of proving defendant made a knowing, intelligent and voluntary waiver of his right to counsel by virtue of the fact his waiver was uncoerced and was made after defendant was given Miranda warnings. Defendant's statements to Detective Dickerson are therefore admissible at trial.
Although the court of appeal properly applied Hattaway, our partial overruling of that opinion herein requires us to find the court of appeal erred in reversing the trial judge's denial of defendant's motion to suppress. The defendant's motion to suppress was properly denied by the trial judge. The case is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
NOTES
[*] Judge Ned E. Doucet, Jr., Court of Appeal, Third Circuit, sitting by assignment in place of Justice James L. Dennis. Calogero, C.J. recused. Rule IV, Part 2, § 3.
[1] State of Louisiana v. Oscar Carter, 94-1387 (La.App. 4th Cir. 11/2/94), ___ So.2d ___.
[2] State of Louisiana v. Oscar Carter, 94-2859 (La. 4/28/95), 653 So.2d 580.
[3] See, e.g., McNeil v. Wisconsin, 501 U.S. 171, 175, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158 (1991); Moran v. Burbine, 475 U.S. 412, 428-29, 106 S.Ct. 1135, 1144-45, 89 L.Ed.2d 410 (1986); Michigan v. Jackson, 475 U.S. 625, 629 and n. 3, 106 S.Ct. 1404, 1407 and n. 3, 89 L.Ed.2d 631 (1986); U.S. v. Gouveia, 467 U.S. 180, 185-88, 104 S.Ct. 2292, 2296-97, 81 L.Ed.2d 146 (1984); Brewer v. Williams, 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977).
[4] In the instant case, the parties mistakenly focus on whether the initial appearance under La. C.Cr.P. art. 230.1 itself constitutes a critical stage of the proceedings. Defendant in this case is not arguing, however, that he was deprived of assistance of counsel at his initial appearance. Rather, defendant's claim is that counsel was not present at his interrogation. The interrogation is the "critical stage" we are dealing with in this case. And, there is no doubt interrogation is a critical stage under both the federal and state constitutions.

As the Supreme Court noted in Michigan v. Jackson, 475 U.S. 625, 629 n. 3, 106 S.Ct. 1404, 1407 n. 3, 89 L.Ed.2d 631 (1986) a case where "arraignment" under Michigan law marked the initiation of prosecution, "[t]he question whether arraignment signals the initiation of adversary judicial proceedings ... is distinct from the question whether the arraignment itself is a critical stage requiring the presence of counsel, absent a valid waiver." See also Gilmore v. Armontrout, 861 F.2d 1061, 1070 (8th Cir.1988), cert. denied, 490 U.S. 1114, 109 S.Ct. 3176, 104 L.Ed.2d 1037 (1989); Upton v. State of Texas, 853 S.W.2d 548, 553 (Tex.Cr.App.1993); State v. Simmons, 260 Ga. 92, 390 S.E.2d 43, 45 (1990); 1 LaFave & Israel, Criminal Procedure, Sec. 6.4, p. 466, n. 59.1 (1991 Supp.).
The two inquires are distinct. When the right to counsel under the Sixth Amendment attaches is determined by the point at which adversary judicial proceedings have begun against defendant and the "adverse positions of government and defendant have solidified." Kirby, 406 U.S. at 689, 92 S.Ct. at 1882. On the other hand, a proceeding is only a critical stage if it is one at which the "accused [is] confronted, just as at trial by the procedural system, or by his expert adversary, or by both" in a situation where the results of the confrontation "might well settle the accused's fate and reduce the trial itself to a mere formality." Gouveia, 467 U.S. at 188-89, 104 S.Ct. at 2292. Thus, a defendant's right to counsel can attach at a particular proceeding even though that event may not also be a critical stage under the Sixth Amendment or under La. Const. Art. I, Sec. 13.
[5] The so-called "covert" interrogation cases upon which the Hattaway opinion was based include Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); McLeod v. Ohio, 381 U.S. 356, 85 S.Ct. 1556, 14 L.Ed.2d 682 (1965) (per curiam); Beatty v. United States, 389 U.S. 45, 88 S.Ct. 234, 19 L.Ed.2d 48 (1967) (per curiam); United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980); and Maine v. Moulton, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985). Another covert interrogation case in the Massiah line not discussed in Hattaway is Kuhlmann v. Wilson, 477 U.S. 436, 459, 106 S.Ct. 2616, 2630, 91 L.Ed.2d 364 (1986).
[6] The Hattaway opinion also cites McLeod v. Ohio, 381 U.S. 356, 85 S.Ct. 1556, 14 L.Ed.2d 682 (1965) (per curiam) for the proposition that the Court had applied Massiah to post-indictment incriminating statements knowingly made by a defendant to government agents. The McLeod per curiam is three sentences long and provides:

The motion for leave to proceed in forma pauperis and the petition for writ of certiorari are granted. The judgment is reversed. Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246.
The facts as established in the Ohio Supreme Court opinion which the Supreme Court reversed reveal defendant voluntarily made an oral confession in the presence of a deputy sheriff and an assistant prosecuting attorney while riding around in the sheriff's automobile searching for the gun used in the holdup. This is clearly not a covert interrogation case. The issue to be resolved then, is whether the Supreme Court intended, by its brief reference to Massiah to hold that even in overt questioning, a waiver can never be valid. We do not take this view for two reasons. First, such a finding would be contrary to the later jurisprudence by the Supreme Court clearly addressing this issue, see Brewer v. Williams, Michigan v. Jackson, Patterson v. Illinois, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988), and Michigan v. Harvey, 494 U.S. 344, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990), discussed extensively infra, and we do not believe several opinions containing scholarly discussion of this issue should be ignored based merely on a three sentence per curiam reversal. Second, the dissenting judges in the Ohio Supreme Court opinion, Ohio v. McLeod, 1 Ohio St.2d 60, 203 N.E.2d 349, 353 (1964) (O'Neill, J. and Gibson, J., dissenting) observed as follows: "It can safely be assumed that the chief deputy sheriff and the assistant prosecuting attorney did not advise defendant of his right to counsel or the Court of Appeals would certainly have noted this fact. Thus, there is no possibility of a waiver of defendant's right to counsel after being informed of his right thereto." Thus, one possible reason for the Supreme Court's reversal could have been that defendant had a Sixth Amendment right to counsel at the time he made the statements, but that he had not made a knowing and intelligent waiver of that right, even though the waiver was voluntary, because he was not aware of his right to counsel.
[7] See Michigan v. Jackson, 475 U.S. 625, 641 n. 4, 106 S.Ct. 1404, 1413 n. 4, 89 L.Ed.2d 631 (1986) (Rehnquist, J., dissenting from the placement of any limitation on waiver) (citations omitted in part):

Several of our Sixth Amendment cases have indeed erected virtually per se barriers against certain kinds of police conduct. See, e.g., Maine v. Moulton ... United States v. Henry... Massiah v. United States.... These cases, however, all share one fundamental characteristic that separates them from the instant cases; in each case, the nature of the police conduct was such that it would have been impossible to find a valid waiver of the defendant's Sixth Amendment right to counsel [as those cases dealt with undisclosed use of a police informant or electronic surveillance].... Here, on the other hand, the conduct of the police was totally open and aboveboard, and could not be said to prevent the defendant from executing a valid Sixth Amendment waiver.
See also Sweat v. Arkansas, 469 U.S. 1172, 1176, 105 S.Ct. 933, 935, 83 L.Ed.2d 944 (1985) (Brennan, J., dissenting from denial of writ, joined by Marshall, J.) (citations omitted) (The Sixth Amendment right to counsel "accrues when `adversary judicial criminal proceedings' are initiated'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' Thereafter, the authorities may not deliberately elicit incriminating statements from the defendant absent the presence of his counsel or a knowing and voluntary waiver of his right to counsel. This prohibition applies both to express interrogation and to surreptitious efforts by the authorities deliberately to elicit incriminating information.") and Wyrick v. Fields, 459 U.S. 42, 53-54, 103 S.Ct. 394, 399-400, 74 L.Ed.2d 214 (1982) (Marshall, J., dissenting from Court's treatment of Fifth Amendment issue, in discussing waiver of Sixth Amendment right to counsel).
[8] The Michigan v. Harvey Court also framed the holdings of the Massiah line of cases, wherein the various defendants were represented by counsel at the time of the covert interrogations, in terms of waiver. 494 U.S. at 348-49, 110 S.Ct. at 1179 (emphasis added) (some citations omitted).

The text of the Amendment provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." The essence of this right, we recognized in Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) is the opportunity for a defendant to consult with an attorney and to have him investigate the case and prepare a defense for trial. More recently, in a line of cases beginning with Massiah v. United States and extending through Maine v. Moulton, the Court has held that once formal criminal proceedings begin, the Sixth Amendment renders inadmissible in the prosecution's case in chief statements" deliberately elicited" from a defendant without an express waiver of the right to counsel.... For the fruits of postindictment interrogations to be admissible in a prosecution's case in chief, the State must prove a voluntary, knowing, and intelligent relinquishment of the Sixth Amendment right to counsel."
[9] Before Hattaway, this court had also held that the appointment of an attorney to represent defendant would not automatically invalidate any subsequent waiver he might make in later interrogation. See State v. Harper, 430 So.2d 627, 634 (La.1983) ("[T]he fact that the defendant had an appointed attorney with whom he had not conferred does not invalidate his April 7th afternoon statements. This Court has said: `We do not believe that the fact that a defendant has an attorney means that law enforcement officials cannot procure a statement of any kind from him without prior notice to, if not the consent, of the attorney.'").
[10] In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Court held that the 5th and 14th Amendments' prohibition against compelled self-incrimination required that custodial interrogation be preceded by advice to the putative defendant that he has the right to remain silent and also the right to the presence of an attorney. If a defendant indicates he wishes to remain silent, the interrogation must cease. If a defendant requests counsel, the interrogation must cease until the counsel is present. In Edwards v. Arizona, the Court held that a waiver of the right to counsel made in response to police-initiated interrogation after defendant had earlier requested counsel could never be valid, whereas a waiver of the right to counsel made in response to police-initiated interrogation where defendant had not requested counsel could be valid if it was knowing, voluntary and intelligent.
[11] Patterson, 487 U.S. at 290 n. 3, 108 S.Ct. at 2393 n. 3 and 2394.
[12] The District of Columbia Court of Appeals in Dew v. United States, 558 A.2d 1112 (D.C.1989) and the Texas Court of Criminal Appeals in its line of cases beginning with Holloway v. State, 780 S.W.2d 787 (Tex.Crim.App.1989), have held that after the Sixth Amendment right to counsel has attached and counsel has been appointed to represent defendant, regardless of whether defendant made some affirmative indication during the appointment that he desired counsel, police cannot initiate interrogation of the defendant and obtain a valid waiver except through defense counsel. Our review of Supreme Court cases discussing waiver, specifically Brewer v. Williams Michigan v. Harvey, and Michigan v. Jackson, as well as the Fifth Circuit's conclusion in Montoya that the right to counsel can be waived in police-initiated interrogation even after the appointment of counsel where there has been no "assertion" of the right to counsel by the defendant, lead us to disagree with this approach. We also subscribe to the view, as stated in 1 LaFave & Israel, Criminal Procedure, Sec. 6.4, p. 471 (1984), that the right to counsel "is the right of the client rather than the attorney, so that it may be waived by the client without counsel's participation."
[13] The right to counsel under La. Const. 1921 Art. I, Sec. 9 is not meaningfully different from the right to counsel protected under La. Const. 1974, Art. I, Sec. 13. Section 9 had provided in pertinent part: "The accused in every instance shall have the right ... to have the assistance of counsel."
[14] For example, where the framers desired to give the citizens of our state greater protections than are found in the United States Constitution, that intent is always obvious on the face of the language used in our constitution. Compare La. Const. Art. I, Sec. 5's protection against "unreasonable searches, seizures, or invasions of privacy" with U.S. Const. Amend. IV's protection against "unreasonable searches and seizures." "The greater protections of the Louisiana Constitution stem from the broader language which it employs." State v. Tucker, 626 So.2d 707, 711 n. 5 (La.1993).
[15] Our conclusion that the Sixth Amendment right to counsel and the right to counsel under La. Const. Art. I, Sec. 13 are coextensive extends only to the issues addressed in this opinion concerning when the right attaches, at what proceedings it applies to, and whether it can be waived.
[16] See also U.S. v. Rodriguez, 888 F.2d 519 (7th Cir.1989), where the Seventh Circuit recognized that the prophylactic rule in Michigan v. Jackson only applied if defendant, who had appointed counsel, had asserted or invoked his right to counsel. See also Wilcher v. Hargett, 978 F.2d 872 (5th Cir.1992), cert. denied, ___ U.S. ___, 114 S.Ct. 96, 126 L.Ed.2d 63 (1993).
[17] The Patterson opinion did not address the" voluntariness" element of the waiver because defendant did not argue on appeal that his confession was involuntary, only that it was not knowing and intelligent.
[18] We note that defendant's waiver was binding on him only so long as he wished it to be. At any time during the questioning defendant could have changed his mind and elected to have the assistance of counsel which would have immediately dissolved the effectiveness of his waiver with respect to any subsequent statements. Patterson, 487 U.S. at 293 n. 5, 108 S.Ct. at 2395 n. 5.
[19] We do not hold today, nor did the Supreme Court hold in Patterson, that receipt of Miranda warnings will always constitute proof of a knowing and intelligent waiver of the right to counsel at any stage of the proceedings; we only hold that such is sufficient proof of a waiver of the right to presence of counsel during an interrogation held after the La. Const. Art. I, Sec. 13 right to counsel has attached. This standard is to be distinguished, for example, from the more rigorous restrictions on the information that must be conveyed to a defendant, and the procedures that must be observed, before permitting a defendant to waive his right to counsel at trial. Patterson, 487 U.S. at 298, 108 S.Ct. at 2398 (citing Faretta v. California, 422 U.S. 806, 835-836, 95 S.Ct. 2525, 2541-2542, 45 L.Ed.2d 562 (1975)).