hLOBRANO, Judge.

PRELUDE:

This matter initially came before us as emergency writ application filed by the State on Friday, May 2, 1997 with the trial scheduled for Monday, May 5th. The ruling complained of was rendered on April 23, 1997, a week earlier and it has never been explained to us why the State waited until the Friday before a Monday trial date to file for review. Regardless, we denied the application because the State did not provide us with a copy of the transcript of the suppression hearing. On May 29th, almost a month later, the State sought review from the Louisiana Supreme Court. Apparently the May 5th trial date was continued by the State.[1] On June 12th the Supreme Court remanded the matter to us for “briefing, argument and full opinion.”[2] In compliance with that order, we ordered the State to submit a brief. It failed to do so. We ordered oral argument for November 20, 1997. The State failed to appear, although defendant and his counsel were present and argued. We now write the full opinion ordered by the Supreme Court.

JaOPINION

The State seeks review of the trial court’s grant of defendant’s motion to suppress cér-tain statements made by him after the arresting officers became aware that he had an attorney.

STATEMENT OF THE FACTS

The transcript of the April 23, 1997 hearing reveals that the defendant was involved in a shooting on Primrose Street in the Seventh District. The defendant left the scene and returned to his home on Pasteur Street in the Third District. From there he phoned the police.
Based upon the defendant’s phone call informing the police of his involvement in a shooting, Officer Brian Gilmore of the Third District was dispatched to the defendant’s home. Officer Gilmore spoke with the defendant and advised him of his Miranda rights. After asking the defendant if he had anything to say, the defendant told Officer Gilmore that the victim and the defendant’s sister had formerly dated. After the breakup, the victim began harassing his sister. Finally, the defendant went to the victim’s residence; the defendant and the victim argued. The defendant stated that the victim armed himself with a gun and fired at the defendant. The defendant retrieved his own gun ft-om his car and returned fire. On his way to his home, the defendant threw the gun into the lake from Lakeshore Drive. At Officer Gilmore’s request, the defendant agreed to show the officers where he had disposed of the gun, although all attempts to retrieve it failed.
While Officer Gilmore and the defendant were at the Lakefront, Sergeant Tanner of the Seventh District arrived. He also questioned the defendant. 13The trial court suppressed all statements the defendant made to Sergeant Tanner; these are the subject of the instant writ application.
The thrust of the defense at the motion to suppress the confession hearing was establishing when the police officers learned that defense counsel had been contacted. The defense presented one witness, Suzanne Le-may. She testified that she resided with the defendant and was present on the night of the incident. When the police arrived at the residence, she phoned defense counsel. She stated that she attempted, at counsel’s request, to give the phone to the defendant. At the time, the defendant was seated in the police car prefatory to going to the Lakefront to locate the weapon. The police would not allow her to give the phone to the defendant. Ms. Lemay testified that she informed the police that the defendant’s lawyer was on the phone and wanted to speak to the defendant and/or the police. The officer refused to speak with counsel.
Ms. Lemay initially stated that the officers had not interviewed the defendant before she *232 contacted counsel. She did acknowledge that the police had come to the house because the defendant himself had called 911. She then testified that before counsel was contacted, the defendant explained to the police what had happened. Because it appeared that Ms. Lemay was giving conflicting statements, the court stated that it needed to get it straight. The court then questioned Ms. Lemay. In response to this questioning, Ms. Lemay explained that defense counsel was called immediately after the police arrived. The call was made by Ms. Lemay’s sister-in-law. After the defendant had been removed from the house, Ms. Lemay informed the police officers that the defendant’s lawyer was “on the phone and he would like to speak to him before you take him.” Finally, in response to the court’s questions, Ms. Lemay stated that the defendant’s statement to the police Uabout the incident was made before he was taken out to the police car, prior to her taking the defendant the phone, and prior to informing the police that the defendant’s attorney was on the phone and wished to speak with him.
The police officers who testified acknowledged that they were made aware that an attorney was attempting to locate and/or speak with the defendant. However, Officer Gilmore, the first officer to have contact with the defendant and to take his statement, indicated that the defendant made his statement before Gilmore was aware that an attorney had been contacted and had become involved. He also testified that he did not arrest the defendant at his residence.
Officer Gilmore gave unrebutted testimony that, upon arrival at the defendant’s residence, he informed the defendant of his rights. Officer Gilmore testified that, after advising the defendant of his rights, he asked him if he had anything he would like to say; he did not place him under arrest. According to Officer Gilmore, advising the defendant of his rights was a “technicality.”
Sergeant Tanner testified that he was the supervising officer from the Seventh District where the shooting occurred. He interviewed the defendant while he was at the Lakefront where the police were looking for the defendant’s weapon. Sgt. Tanner stated that he first questioned the defendant as to whether he had been advised of his rights, which the defendant indicated that he had. Sergeant Tanner advised the defendant of his rights again and told him that he was going to be charged with attempted murder. The defendant then made a statement to Sergeant Tanner in which he again stated that he had thrown the weapon into the lake. Sergeant Tanner ceased questioning to engage in the search for the weapon. When the weapon could not be located, Sergeant Tanner again questioned the defendant about whether he had been mistaken as to where he threw the gun. At that time, | gthe defendant stated that he did not want to say anything more but wanted to speak to a lawyer. The defendant was not questioned any further.

DISCUSSION

The trial court granted the motion to suppress the confession in part, stating that once any police officer was placed on notice that the defendant has an attorney and that the attorney wished to be present prior to questioning, then that must be respected. Based on this reasoning, it appears the court found that, factually, the defendant made his statement to Officer Gilmore before counsel was involved and before Officer Gilmore knew an attorney had been contacted on behalf of the defendant. Thus the court denied the motion as to defendant’s statement to Gilmore. The trial court apparently granted the motion to suppress the defendant’s statement to Sergeant Tanner because it was made after the police officers were aware that the defendant had an attorney who wished to be present at interrogation.
The State relies on State v. Carter, 94-2859 (La.11/27/95), 664 So.2d 367 arguing that the right to counsel belongs to the defendant, not to his counsel, and thus he was free to waive it. In State v. Pierce, 96-1316 (La.App. 4th Cir. 9/25/96), 681 So.2d 478, we reasoned:
The right to counsel “is the right of the client rather than the attorney, so that it may be waived by the client without counsel’s participation.” State v. Carter, 94-2859, p. 17, fn. 12 (La.11/27/95), 664 So.2d 367, 380. Once a suspect has expressed a desire to deal with the police only through *233 counsel, he or she is not subject to further interrogation by authorities until counsel has been made available to him or her, unless the suspect initiates further communication, exchanges or conversations with police. State v. Tort, 93-0772 (La.2/9/96), 672 So.2d 116. The defendant is entitled to | (¡waive the presence of counsel even if counsel does not agree or is not present.
State v. Pierce, 96-1316 at pp. 2-3, 681 So.2d at 479.
In Pierce, the police officer investigating the murder allegedly committed by the defendant was notified by the defendant’s counsel that he had been retained and that the officers should not question the defendant under any circumstances without counsel’s presence. Later that day, the defendant turned himself in to the officer. The defendant made an inculpatory statement, after having been read his rights; the officer did not attempt to contact counsel, apparently because he knew that counsel could not be present but would be available the next day. According to the officer, the defendant told him before making the statement that “he could not wait that long” and “had to come in and tell the truth.” Pierce, at p. 2, 681 So.2d at 479. After the trial court granted the motion to suppress the confession, this Court reversed, relying upon Carter.
Subsequent to our ruling, the trial court reopened the motion hearing and received testimony which indicated that the investigating officer had asked the defendant repeatedly to make a statement. Based on that testimony, the trial court found as a factual matter that the defendant never waived his right to counsel and again granted the motion. Once again this Court reversed. State v. Pierce, 97-0197 (La.App. 4th Cir. 3/5/97), 689 So.2d 740, writ denied, 97-1054 (La.5/30/97), 694 So.2d 254. We found that the record did not support the trial court’s factual conclusions. The concurring opinion states:
The best evidence of defendant’s waiver of his right to counsel is the fact that he gave the statement, in the presence of his father, with the knowledge that he had an attorney who had already contacted the police. There is absolutely no evidence of coercion or duress by the police, and the defendant does not claim any. Knowing full well that his attorney did not want him to Umake a statement, defendant did so anyway. Under those circumstances, I agree that he waived his right to have counsel present.
Pierce, 689 So.2d at 741.
In the instant case, Sergeant Tanner and Officer Gilmore both testified that the defendant was advised of his rights. The testimony also indicates that the defendant was aware that his family had contacted counsel on his behalf. Sergeant Tanner testified that when he attempted to interrogate the defendant in greater detail, the defendant did invoke his right to counsel. Thus, defendant was well aware of that right and the fact that he made a statement prior to invoking it certainly evidences a waiver at that time. However, we are mindful that during oral argument, defendant strongly urged that the totality of the circumstances suggests he was coerced or intimidated when he made the statement at the lakefront. Despite the fact that there is no record evidence before us to support that position, our ruling does not preclude the trial court from reopening the motion to suppress for additional evidence on this issue.
Accordingly, based on the evidence before us, we reverse the trial court judgment and deny defendant’s motion to suppress. We remand for further proceedings.
REVERSED AND REMANDED.

. Perhaps if the State had sought a continuance from the trial court before filing an "emergency” with this court, it would not have been an “emergency.”

. The State's application to the Supreme Court contained a copy of the transcript.