803 So.2d 454 (2001)
STATE of Louisiana, Appellee,
v.
Gregory G. MACKENS, Appellant.
No. 35,350-KA.
Court of Appeal of Louisiana, Second Circuit.
December 28, 2001.
*457 Amy C. Ellender, Baton Rouge, Counsel for Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, John Michael Ruddick, Assistant District Attorney, Counsel for Appellee.
Before STEWART, GASKINS and CARAWAY, JJ.
CARAWAY, J.
The defendant was tried and convicted for the second degree murder of his ex-wife, in violation of La. R.S. 14:30.1. He was sentenced to life imprisonment at hard labor. The defendant appeals, contesting the sufficiency of the evidence, and the trial court's failure to suppress four statements which he made to the police. For the reasons below, defendant's conviction is affirmed.

Facts
During the early morning hours of August 18, 1998, Officer Orville Doster ("Officer Doster") of the Union Parish Sheriffs Department was dispatched to the Farmerville Hospital. At the hospital, the defendant, Gregory G. Mackens ("Mackens"), told Officers Doster and Dewayne Lenard ("Officer Lenard") that he stabbed himself. Mackens suffered from multiple stab wounds and cut wrists. At this time, the officers did not advise Mackens of his Miranda rights. Mackens told the officers that his ex-wife was with him earlier. He also told the officers that he tried to commit suicide off of Hwy. 34, and that he threw the knife into a wooded area. The officers suspected that Mackens' wounds were not self-inflicted.
Mackens was then transferred to E.A. Conway Hospital ("Conway Hospital") in Monroe. Officer Richard Giddens ("Officer Giddens"), from the Ouachita Parish Sheriffs Department, was dispatched to Conway Hospital regarding Mackens' self-inflicted wounds. Officer Giddens advised the defendant of his Miranda rights and questioned him along with Sergeant Mark Mashaw. Mackens told these officers that he stabbed himself while he was alone.
Sgt. Mashaw stated that Mackens said that although his ex-wife was not with him at the time he stabbed himself, they had been in a fight earlier in the evening. Mackens gave the officers his ex-wife's address, a description of where he stabbed himself, and where he disposed of the knife. The Ouachita officers likewise suspected that Mackens' wounds were not self-inflicted. The officers left Conway Hospital to find Mackens' ex-wife, the knife, and a possible crime scene. The police found Donna Mackens' ("Donna's") body in a sand pit off of Hwy. 34. Mackens *458 was then arrested on August 20, 1998, for his ex-wife's murder.
At trial, the defendant testified that he had plans to go out with Donna on the evening of August 17, 1998, after she got off of work. He testified that he arrived at her place of employment, Contrary Mary's bar, about noon. Mackens stated that he and Donna drank and played pool all afternoon. He further testified that Donna was upset, because she wanted him to drop pending charges against her.[1] Mackens claims that they left the bar and drove down Hwy. 34 to talk. The two argued in the car as he drove. Then Mackens pulled over to the side of the road in a sand pit area to talk. He stated that Donna got out of the car and went around to the driver's side. He claimed to have exited the car with a knife and showed it to Donna to scare her. Mackens asserts that Donna told him to put the knife up, and that he then gave it to her. At this point, Mackens maintains that Donna stabbed him twice, and that one stab wound was to his lung. Mackens stated that the two struggled while he attempted to get the knife away from Donna. Mackens remembered stabbing Donna twice.
Ernest Roy Thibodeaux ("Thibodeaux") testified at trial that he was at Contrary Mary's bar on August 17, 1998, and saw a big man following Donna. Thibodeaux could not identify the "big man" as the defendant. Thibodeaux further testified that after Donna left the bar, he heard her screaming and saw the "big man" roughing her up, cutting her, shaking her, and beating her. Thibodeaux said that Donna and the man spoke for about five minutes, and she kept shaking her head, "no."
Eddie Joy Donovan ("Donovan") testified at defendant's trial. She relieved Donna as bartender at approximately 4:00 p.m. on August 17, 1998. Donovan testified that a person, who she understood to be Donna's ex-husband, arrived about five to ten minutes after her arrival. However, she could not identify Mackens at trial as the person she saw at the bar. Donovan further testified that the man she saw had a very angry look on his face. The man told Donna to shut up, and that he was tired of being stood up. Donovan also stated that Donna was nervous and upset, and that the man followed her out of the bar.
Donna Henderson ("Henderson") testified that she was driving by Contrary Mary's bar between 5:00 and 5:30 p.m. on August 17, 1998. Henderson saw a blonde-headed woman being forced into a car by a "big man," but she could not see the people's faces. She testified that the vehicle was a grey-colored, little, two-door car, possibly a Mazda. In Mackens' testimony, he stated that he was driving a grey Mazda on that date.
In addition to Mackens' two statements given on August 18, two other statements were revealed at trial. Officer Lenard testified that he and Lieutenant Jay Via ("Lt. Via") spoke to Mackens on August 20, 1998 at Conway Hospital. Officer Lenard testified that Lt. Via advised Mackens of his Miranda rights before Mackens gave a statement. Lt. Via also testified that Mackens understood his rights and agreed to speak with the officers. After taking Mackens' statement, the officers arrested defendant.
*459 Lt. Via and Officer Johnny Lucas ("Officer Lucas") took another statement from Mackens on August 26, 1998, again after advising him of his Miranda rights. Lt. Via testified that this statement was the same in substance as the one given on August 20, 1998.
Dr. Stephen Hayne ("Dr. Hayne"), a stipulated forensic pathologist expert, performed Donna's autopsy. The autopsy revealed that Donna died from a total of five stab wounds and one slash wound. Dr. Hayne testified that there was a total of nine stab wounds, which included penetrating wounds to the chest, three stab wounds to the left lung, one to the heart, and another to the right lung. The slash wound was found across the front surface of Donna's neck. Dr. Hayne stated that he found defensive posturing injuries on Donna's right and left upper extremities. He further testified that it appeared that Donna was beaten first, then stabbed several times. In addition, Dr. Hayne testified that it was unlikely that Donna ever had control of the knife, and it was unlikely that the knife was taken from her as Mackens claimed, due to a lack of bruising on Donna's palms.
Although Mackens denied telling the police that Donna never got control of the knife, Officer Lenard testified that in Mackens' August 20, 1998 statement, the defendant said that Donna never got control of the knife.
Mackens waived trial by jury and, after a bench trial, was found guilty of second degree murder by the trial judge.

Discussion

Sufficiency of the Evidence
In his first assignment of error, Mackens argues that the evidence was insufficient to negate the possibility that the killing in this case was justifiable homicide. Also, Mackens argues that there was insufficient evidence to find that he had the requisite specific intent to kill or inflict great bodily harm. Lastly, Mackens argues that the trial court erred in failing to reduce the verdict to manslaughter, based on the evidence presented at trial.
The standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
When circumstantial evidence forms the basis for the conviction, such evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438.[2] *460 The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events; rather, when evaluating the evidence in the light most favorable to the prosecution, the court determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson v. Virginia, supra. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994); State v. Owens, supra.
A justifiable homicide is a homicide committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and the killing is necessary to save himself from that danger. La. R.S. 14:20. Second degree murder, as pertinent for this case, is the killing of a human being when the offender has the specific intent to kill or inflict great bodily harm. La. R.S. 14:30.1. The offense of manslaughter is defined as a homicide that would be second degree murder but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. La. R.S. 14:31.
When self-defense is raised as an issue by the defendant, the state has the burden of proving, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. Thus, the issue in this case is whether a rational fact finder, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the defendant did not kill Donna in self-defense. State v. Hudson, 33,357 (La.App.2d Cir.5/10/00), 760 So.2d 591.
In State v. Bates, 95-1513, p. 11 (La. App. 1st Cir.11/8/96), 683 So.2d 1370, 1376, the First Circuit upheld a verdict of second degree murder under facts similar to this case:
After the defendant entered the victim's home, he asked her what was going on and who had been there. He and the victim began to argue. The victim went into the kitchen and got two knives, one in each hand. The defendant asked her what she was doing. According to the defendant, he had been having problems during their relationship with her marital infidelity involving other men; and he was apparently convinced she had, only moments before, been with another man inside the house. The victim was "fussing and cussing" and started trying to "hit" the defendant. The victim cut the defendant on the hand with one of the knives and managed to stab him in the stomach. The defendant began trying to disarm the victim and succeeded in taking both knives away from her. The defendant stated that his "mind just clicked and the next thing I knew she was dead."
The Bates court ruled that the facts and circumstances were sufficient to allow the fact finder to reject the defendant's defense of justifiable homicide.
The testimony in Mackens' trial established that Donna was 5 feet, 7 inches tall and weighed 130 pounds, while Mackens is six feet tall and weighs approximately 240 pounds. Even though Mackens argues that he was debilitated after receiving his wounds and felt as though Donna was going to kill him, his testimony *461 at trial clearly establishes that his victim was not a threat to him after he took the knife away from her. Moreover, Mackens' contentions at trial are inconsistent with the physical evidence and his prior statements to the police. Photographs of the scene show that Donna's purse was wrapped around her feet. Also, in at least one statement given to the police, Mackens said that Donna never got control of the knife.
Upon these facts, there was sufficient evidence to negate the possibility that Mackens killed Donna in self-defense. Even if we presume that, at one point, Donna had the knife and defendant reasonably believed he was in imminent danger of losing his life, the trial court correctly ruled that once Donna was disarmed, Mackens could not reasonably believe that killing her was necessary to save him from danger.
Mackens also claims that the state did not prove that he possessed the requisite specific intent required to convict him of second degree murder.
Specific intent is a state of mind and need not be proved as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982); State v. Fuller, 414 So.2d 306 (La.1982); State v. Doby, 540 So.2d 1008 (La.App. 2d Cir.), writ denied, 544 So.2d 398 (1989). Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act. La. R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); State v. McCray, 621 So.2d 94 (La.App. 2d Cir.1993).
In State v. Bates, supra, the court also found sufficient evidence to prove that the defendant had the requisite specific intent from the number and nature of the victim's stab wounds. State v. Bates, supra, citing State v. Carney, 319 So.2d 400 (La.1975). In this case, Dr. Hayne testified extensively about Donna's wounds. He found five lethal stab wounds on Donna's body, as well as one lethal slash across Donna's neck. In addition, the pathologist found other, non-lethal stab wounds; Donna's body revealed a total of nine stab wounds. Dr. Hayne also noted blunt force trauma to Donna's hands and forearms, consisting of bruises and contusions. Defensive injuries were also found on Donna's upper extremities. Therefore, we find that due to the number of stabs, as well as the nature of Donna's wounds, there was sufficient evidence to find that Mackens possessed the specific intent to kill or inflict great bodily harm.
Lastly, Mackens complains that the trial court erred by failing to return a verdict of manslaughter, because the defense proved mitigatory factors by a preponderance of the evidence.
The existence of "sudden passion" and "heat of blood" are not elements of the crime of manslaughter but, rather, are factors in the nature of a defense which may reduce the grade of homicide. Provocation is a question of fact to be determined by the trier of fact. Thus, the issue remaining is whether or not a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors were not established by the defendant by a preponderance of the evidence. State v. Lombard, 486 So.2d 106 (La.1986).
In State v. Byes, 97-1876 (La.App.4th Cir.4/21/99), 735 So.2d 758, writ denied, 99-1559 (La.11/5/99), 751 So.2d 231, the only evidence of provocation came from the defendant's testimony. The court found the jury's rejection of the defendant's *462 provocation testimony was an issue of credibility and was not an abuse of discretion.
While there is an extensive history of violence between Mackens and Donna, there was also evidence that Mackens was the aggressor in this incident. The trial evidence supports the conclusion that Mackens fought with Donna outside of Contrary Mary's bar, and that he forced Donna into his car. Mackens admitted that he produced the knife in an attempt to scare Donna. In one of his statements to the police, he stated that Donna never gained control of the knife. In his last recorded statement to the police on August 26, he indicated that he stabbed Donna first and then during the ensuing fight with her, he was stabbed. Dr. Hayne further testified that it was unlikely that Donna ever had control of the knife.
Based on this record, the trial court reasonably rejected Mackens' version of the facts and could rule that no mitigating circumstances were established which would require a reduced verdict of manslaughter. In light of the evidence that Donna did not have control of the knife, that Mackens' injuries were self-inflicted, and that Mackens was the aggressor, we conclude that the trial court correctly rejected the defense evidence of mitigating circumstances. Thus, this assignment of error is without merit.

Motion to Suppress Statements
In his second assignment of error, Mackens argues that the trial court should have suppressed the four statements he gave to the police. On August 18, 1998, Mackens gave two statements ("Statement Number One" and "Statement Number Two") to the police while he was hospitalized. On August 20, 1998, Mackens gave a third statement ("Statement Number Three") to Lt. Via and Officer Lenard. During Statement Number Three, Mackens was placed under arrest and transferred to the prison ward at the hospital. On August 26, 1998, the defendant gave a fourth statement ("Statement Number Four") to the police.
Mackens filed two motions to suppress the confessions before trial. No pretrial hearing for the motions was conducted. Instead, during the course of the bench trial, as the statements were sought to be introduced, defense counsel was allowed to present objections regarding the admissibility of the statements and to cross-examine the officers before the substance of each statement was introduced into evidence.
Before a confession can be introduced into evidence, the state must affirmatively prove that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La. R.S. 15:451[3]; La.C.Cr.P. art. 703.[4] The *463 state must also establish that an accused who makes a statement during custodial interrogation was first advised of his Miranda rights. State v. Walker, 28,577 (La. App.2d Cir.10/4/96), 681 So.2d 1023; State v. Taylor, 30,310 (La.App.2d Cir.2/25/98), 709 So.2d 883.
A trial court's findings following a free and voluntary hearing are entitled to great weight and will not be disturbed unless unsupported by the evidence. State v. Durr, 28,197 (La. App.2d Cir.6/26/96), 677 So.2d 596; State v. English, 582 So.2d 1358 (La.App. 2d Cir.), writ denied, 584 So.2d 1172 (La. 1991). Testimony of the interviewing police officer alone may be sufficient to prove that the statement was given freely and voluntarily. State v. Pittman, 585 So.2d 591 (La.App. 5th Cir.), writ denied, 586 So.2d 545 (La.1991). Police testimony may overcome a defendant's claim that his statement was involuntary, because he suffered from a wound or lack of sleep. State v. Billiot, 94-2419 (La.App. 1st Cir.4/4/96), 672 So.2d 361, writ denied, 96-1149 (La.10/11/96), 680 So.2d 655.
After Mackens presented himself at Farmerville Hospital, Officer Doster asked the defendant if a woman had been in the car. Mackens indicated that his ex-wife was in the car. He also told the officer where he discarded the knife he used to cut himself.
In Mackens' pretrial motion to suppress Statement Number One, he claimed he was not advised of his constitutional rights in accordance with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Miranda applies if the defendant made his statement during a custodial interrogation.[5] Officer Doster testified that he did not advise Mackens of his Miranda rights during Statement Number One. The officer explained that he was not investigating Mackens for any criminal activity, and that the defendant was not in custody and was free to leave at any time.
Prior to Officer Doster's testimony regarding the substance of Mackens' statement, the trial court allowed the defense to cross-examine Officer Doster. Declining to cross-examine the officer, defense counsel stated: "I don't believe it's necessary. I believe he simply testified that he was not conducting an investigation. That Mr. *464 Mackens was not a suspect at this time." Then, Officer Doster testified to the substance of Statement Number One without objection. Accordingly, the pretrial objections to the admissibility of Statement Number One were waived at trial.
Once Mackens was transferred to Conway Hospital, he was questioned again by the police. Prior to this questioning, however, Mackens was advised of his rights under Miranda. On this issue, Officer Giddens testified that when he spoke to Mackens at Conway Hospital, Mackens was not a suspect in any crime and was not in custody. Officer Giddens also stated that Mackens told him that he stabbed himself while he was alone. Again, the defense was allowed to cross-examine the officer prior to the admission of the substance of the statement. After cross-examination, defense counsel stated:
By The Court: Any argument?
By Mr. Nolen: Your honor, as far as the statement that the officer took from Mr. Mackens, we have no objection to him being examined about the statement. I don't see anything in here that's inculpatory and I
By Mr. Jones: I agree. It's not inculpatory.
By Mr. Nolen: Then I agree with Mr. Jones that based on the officer's testimony Miranda may not apply in this case. But it appears that he did read him his Miranda rights. And that what I can see of the statement that Mr. Mackens seemed to understand it.
Therefore, Mackens waived his right to object to the admissibility of Statement Number Two and his assignment of error is without merit.
Statement Number Three was taken while Mackens was in the hospital immediately prior to his arrest. The Miranda rights were given by the officers, and they testified that Mackens understood those rights and voluntarily answered the officers' questions. Lt. Via testified that he attempted to obtain a tape recording of the statement, but that the recorder, which was hidden from Mackens in the officer's pocket, did not pick up any of Mackens' answers to the officers' questions. At trial, Mackens objected to the free and voluntary nature of the statement due to his medical condition, and he attacks the statement for that reason on appeal.
Prior to the introduction of the statement, Mackens' medical records were introduced. The records revealed that Mackens' surgery for his wounds had previously occurred over two days before the officers' questioning. The records showed that on the afternoon of August 20, prior to Statement Number Three, Mackens was given two medications and had a chest tube removed from his body. The two officers testified, however, that Mackens appeared to be fully coherent, and that he freely and voluntarily responded to the questioning. Following the trial court's ruling on the admissibility of Statement Number Three, the officers testified regarding Mackens' answers. Officer Lenard testified that in one response to a question on August 20, Mackens stated that Donna never got control of the knife.
From our review of the testimony and the medical records, we find that the evidence supports the trial court's ruling that Mackens was not medically impaired at the time of Statement Number Three, and that the statement was given freely and voluntarily.
Mackens also argues that the trial court erred in admitting his August 26, 1998 statement, Statement Number Four, given at the police station immediately after Mackens' release from the hospital. Mackens claims that he was not presented *465 before a magistrate for the purpose of appointing counsel, as required by La. C.Cr.P. art. 230.1.[6] The state counters that Mackens was not in the sheriff's custody until he was booked on August 26, 1998, even though he was arrested at the hospital on August 20, 1998. Therefore, the state contends that there was no need to comply with the requirements of La. C.Cr.P. art. 230.1.
Although Mackens' written motion to suppress argued that Statement Number Four should be suppressed because La.C.Cr.P. art. 230.1 was violated, defense counsel did not object at trial on article 230.1 grounds. Instead, Mackens contended that Statement Number Four should be suppressed under the fruit of the poisonous tree doctrine. Therefore, Mackens waived his first objection based on an alleged violation of La.C.Cr.P. art. 230.1. La.C.Cr.P. art. 841[7]; State v. Miller, 448 So.2d 137 (La.App. 1st Cir.), writ denied, 449 So.2d 1355 (La.1984). Further, it is uncontroverted that Mackens was advised of his constitutional rights, executed a written waiver of rights, and was not coerced into giving the August 26 statement to the police. Therefore, the trial court did not err in admitting Statement Number Four.
Accordingly, this assignment of error likewise lacks merit.

Conclusion
For the foregoing reasons, Gregory G. Mackens' conviction and sentence are hereby affirmed.
AFFIRMED.
NOTES
[1] Mackens claims that there were pending charges against Donna in Union Parish. Mackens stated that Donna found him and another woman in his trailer. He further testified that Donna allegedly broke a window in his trailer and the windshield out of the other woman's vehicle. Defendant claims that Donna scratched him, slapped him, and tore off his shirt during this incident.
[2] La. R.S. 15:438 reads: "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."
[3] La. R.S. 15:451 reads: "Before what purposes to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises."
[4] La.C.Cr.P. art. 703 states, in pertinent part:

* * *
B. A defendant may move on any constitutional ground to suppress a confession or statement of any nature made by the defendant.
C. A motion filed under the provisions of this Article must be filed in accordance with Article 521, ... The court in its discretion may permit the filing of a motion to suppress at any time before or during the trial.
D. On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant ...
* * *
F. A ruling prior to trial on the merits, upon a motion to suppress, is binding at the trial. Failure to file a motion to suppress evidence in accordance with this Article prevents the defendant from objecting to its admissibility at the trial on the merits on a ground assertable by a motion to suppress.
G. When a ruling on a motion to suppress a confession or statement is adverse to the defendant, the state shall be required, prior to presenting the confession or statement to the jury, to introduce evidence concerning the circumstances surrounding the making of the confession or statement for the purpose of enabling the jury to determine the weight to be given the confession or statement. A ruling made adversely to the defendant prior to trial upon a motion to suppress a confession or statement does not prevent the defendant from introducing evidence during the trial concerning the circumstances surrounding the making of the confession or statement for the purpose of enabling the jury to determine the weight to be given the confession or statement.
[5] Whether a person has been taken into custody, detained or deprived of his freedom of action in a significant way is determined by an objective test on a case-by-case basis. State v. Womack, 592 So.2d 872 (La.App. 2d Cir.1991), writ denied, 600 So.2d 675 (La. 1992).
[6] La.C.Cr.P. art. 230.1 states:

A. The sheriff or law enforcement officer having custody of an arrested person shall bring him promptly, and in any case within seventy-two hours from the time of the arrest, before a judge for the purpose of appointment of counsel. Saturdays, Sundays, and legal holidays shall be excluded in computing the seventy-two hour period referred to herein. The defendant shall appear in person unless the court by local rule provides for such appearance by telephone or audio-video electronic equipment.
B. At this appearance, if a defendant has the right to have the court appoint counsel to defend him, the court shall assign counsel to the defendant. The court may also, in its discretion, determine or review a prior determination of the amount of bail.
C. If the arrested person is not brought before a judge in accordance with the provisions of Paragraph A of this Article, he shall be released forthwith.
D. The failure of the sheriff or law enforcement officer to comply with the requirements herein shall have no effect whatsoever upon the validity of the proceedings thereafter against the defendant.
[7] La.C.Cr.P. art. 841 reads:

A. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
B. The requirement of an objection shall not apply to the court's ruling on any written motion.
C. The necessity for and specificity of evidentiary objections are governed by the Louisiana Code of Evidence.