SUSAN M. CHEHARDY, Judge.
 

 |2On appeal, defendant seeks review of his conviction for indecent behavior with a juvenile. For the following reasons, we affirm his conviction and sentence.
 

 Facts and Procedural History
 

 Because defendant’s conviction resulted from a guilty plea without a trial, the facts presented were gathered from pre-trial hearings and evidence submitted at those hearings. According to the record, during a pool party at his parents’ home, on or about July 5, 2008, defendant was in a room with a six-year-old female who was naked when he “ejaculated on myself and touched her arm with my penis and touched her bottom with my finger and ... she was wearing her underwear on her bottom and her arm was bare.” Defendant stated that another adult entered the room, witnessed the hysterical child, and alerted the child’s father, who took her to a doctor.
 

 On January 21, 2009, the Jefferson Parish District Attorney filed a bill of information charging defendant, William French, with indecent behavior with a juvenile, in violation of La. R.S. 14:81. On January 29, 2009, defendant entered a plea of “not guilty and not guilty by reason of insanity.” On February 13, 2009, |sthe trial
 
 *1157
 
 judge ordered that a sanity commission be convened. After five competency hearings over the next seventeen months,
 
 [1]
 
 defendant was found to be competent to stand trial on August 18, 2010. Also that day, defendant’s motion to suppress his statements, motion to exclude expert testimony, and motion to quash the bill of information were heard and denied.
 

 On August 24, 2010, defendant withdrew his plea of not guilty and not guilty by reason of insanity and entered a plea of guilty as charged to indecent behavior with a juvenile,
 
 [2]
 
 reserving his right to appeal the rulings on his motion to suppress statements, motion to quash the bill of information and motion to exclude expert testimony pursuant to
 
 State v.
 
 Crosby,
 
 [3]
 
 Pursuant to the plea agreement, the trial judge sentenced defendant to imprisonment at hard labor for two years without benefit of parole, probation, or suspension of sentence. Defendant was advised of the sex offender registration and notification requirements. Defendant filed a timely motion for appeal, which was granted. This appeal follows.
 

 On appeal, defendant presents two assignments of error. In his first assignment of error, defendant argues that the trial judge erred in denying the “Motions to Suppress.”
 

 First, defendant specifically argues that the trial judge erred by denying the motion to suppress his statement to Detective Vega as involuntary because it was made after his father retained an attorney to represent him, which the detective knew and ignored. With respect to the statement to Detective Vega, the State responds that a defendant’s father does not have standing to invoke a competent |4adult defendant’s right to counsel through a letter given to a healthcare worker or by the father’s statement that the father would notify an attorney.
 

 In
 
 Miranda v. Arizona,
 

 [4]
 

 the United States Supreme Court held that the Fifth Amendment gives a suspect subject to custodial interrogation
 
 [5]
 
 the right to consult with counsel prior to questioning, as well as a right to have counsel present during any questioning. The police are required to explain this right to the suspect prior to questioning.
 
 State v. Payne,
 
 01-3196, p. 7 (La.12/4/02), 838 So.2d 927, 934. After a knowing and voluntary waiver of the
 
 Miranda
 
 rights, law enforcement officers may continue questioning a suspect unless or until he clearly requests an attorney.
 
 State v. Gant,
 
 06-232, p. 28 (La.App. 5 Cir. 9/26/06), 942 So.2d 1099, 1122,
 
 writ denied,
 
 06-2529 (La.5/4/07), 956 So.2d 599 (citing
 
 Davis v. United States,
 
 512 U.S. 452, 461, 114 S.Ct. 2350, 2356, 129 L.Ed.2d 362 (1994)).
 

 To invoke his right to counsel, the suspect must articulate his desire to have counsel present with sufficient clarity to enable a reasonable police officer, in the
 
 *1158
 
 circumstances, to understand his statement to be a request for an attorney.
 
 State v. Gant, supra.
 
 The invocation of the right to counsel during the custodial interrogation “requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney
 
 in dealing with custodial interrogation by the police.” State v. Payne,
 
 01-3196 at 9, 833 So.2d at 935 (quoting
 
 McNeil v. Wisconsin,
 
 501 U.S. 171, 178, 111 S.Ct. 2204, 2209, 115 L.Ed.2d 158 (1991)(emphasis in original)).
 

 Before an inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his
 
 Miranda
 
 rights, that he voluntarily and Ifiintelligently waived those rights, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducement, or promises.
 
 State v. Loeb,
 
 09-341, p. 11 (La.App. 5 Cir. 2/23/10), 34 So.3d 917, 924-25,
 
 writ denied,
 
 10-681 (La.10/15/10), 45 So.3d 1110,
 
 (citing
 
 La. R.S. 15:451);
 
 State v. Blank,
 
 04-0204, pp. 9-10 (La.4/11/07), 955 So.2d 90, 103,
 
 cert. denied,
 
 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007).
 

 The critical factor in a knowing and intelligent waiver is whether the defendant was able to understand the rights explained to him and voluntarily gave the statement.
 
 Loeb,
 
 09-341 at 11-12, 34 So.3d at 925. Testimony of the interviewing police officer alone may be sufficient proof that a defendant’s statements were freely and voluntarily given.
 
 State v. Mackens,
 
 35,350, p. 13 (La.App. 2 Cir. 12/28/01), 803 So.2d 454, 463,
 
 writ denied,
 
 02-0413 (La.1/24/03), 836 So.2d 37. The admissibility of a confession or statement is a determination for the trial judge and the judge’s conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession or statement are entitled to great weight and will not be overturned unless unsupported by the evidence.
 
 State v. Williams,
 
 10-51, p. 5 (La.App. 5 Cir. 7/27/10), 47 So.3d 467, 471,
 
 writ denied,
 
 10-2083 (La.2/18/11), 57 So.3d 330.
 

 At the suppression hearing in question, Detective Nick Vega of the Jefferson Parish Sheriffs Office Personal Violence Unit testified that, to his knowledge, on or before July 23, 2008, the defendant had been transferred from the St. Charles Parish Correctional Center to the Jefferson Parish Correctional Center pursuant to an arrest warrant. On or about July 23, 2008, Detective Vega approached defendant to interview him about his involvement with an incident of inappropriate contact with a juvenile that occurred during a swimming party at his parents’ house Ron July 5, 2008. Defendant agreed to go to the Investigations Bureau with Detective Vega.
 

 Before Detective Vega started the interview, defendant asked to call his father, which Detective Vega allowed defendant to do. The detective remained in the room while the defendant spoke with his father. Detective Vega heard the defendant “advise his father that he wanted to speak to detectives in reference to the incident because it was the right thing to do.”
 

 Detective Vega also spoke by telephone to defendant’s father, who advised Detective Vega that William was going to cooperate with the investigation. Defendant’s father also told Detective Vega that he was going to notify his lawyer. Detective Vega also stated that the defendant’s father told him that the defendant “was represented by Joe Marcel and ... that [Marcel] was going to be giving you a phone call.” Detective Vega stated that, even after speaking to his father, defendant did not ask to speak with Mr. Marcel or ask to stop the interview.
 

 
 *1159
 
 Prior to the taped interview, Detective Vega again advised defendant of his rights utilizing a form entitled “Rights of Arres-tee or Suspects.” On that form, which was completed at about 5:15 p.m., defendant noted that he was twenty-eight years old and that he had graduated from Loyola University with majors in Computer Science and Music. Detective Vega testified that defendant knew that he was under arrest and charged with indecent behavior with a juvenile. Further, defendant stated and initialed that he understood each right after the detective read it. In the detective’s opinion, the defendant did not appear to have any questions l7about his rights. Defendant did not invoke any of his rights, and, finally, he signed the form, on the line underscored “(ACCUSED),” waiving his rights.
 
 [6]
 

 At about 5:40 p.m. that same day, defendant admitted to ejaculating in the presence of a “naked” minor child, touching that minor child’s arm with his unclothed penis, and touching that minor child’s buttock over the underwear with his hand. Detective Vega testified that he did not offer defendant anything in exchange for his statement and did not make any threats or promises to defendant. Detective Vega testified that defendant did not appear to be confused and did not have trouble understanding any of the questions that Detective Vega asked him. Detective Vega questioned defendant about his medications and defendant stated that he was taking psychotropic medication for schi-zoaffective disorder. Detective Vega stated that defendant seemed calm and lucid during their interview.
 

 Detective Vega further testified that he knew that the defendant had been in a facility in St. Charles Parish for treatment of his emotional and mental condition. He also knew that the hospital staff released the defendant to the St. Charles Parish Sheriffs Office since defendant was under arrest.
 

 Charles French, defendant’s father, testified at the suppression hearing that, at about 6:55 p.m. on July 23, 2008, defendant called his father again and reported that he had given a statement. Mr. French stated that, during this second telephone conversation, which was more than one hour after the statement, the defendant told him that Detective Vega “coerced” him to make a statement and claimed that he had “not had meds since 8 am.”
 

 | sAfter hearing this testimony, the trial judge took the matter under advisement. On December 11, 2009, the trial judge denied the motion to suppress defendant’s statement to Detective Vega.
 

 On appeal, defendant contends that the statement should have been suppressed because it was obtained in violation of his right to counsel. Specifically, he contends that his father’s written and verbal assertion that his father had retained counsel for him was sufficient to invoke his right to counsel.
 

 In
 
 Moran v. Burbine,
 
 475 U.S. 412, 422, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986), the defendant was informed of and waived his
 
 Miranda
 
 rights before he confessed. In the meantime, without his knowledge, his sister obtained an attorney to represent him.
 
 Moran v. Burbine,
 
 at 415-16, 106 S.Ct. 1135. He was later found guilty of first degree murder.
 

 On appeal to the United States Supreme Court, Moran argued that his inculpatory statements should have been suppressed.
 
 *1160
 
 The Court held, however, that the action of the police did not violate the defendant’s Fifth Amendment right against self-incrimination.
 
 Moran v. Burbine,
 
 475 U.S. at 420, 106 S.Ct. 1135. Applying traditional waiver principles, and after noting that the waiver was otherwise voluntary, the court stated that “[e]vents occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right.”
 
 Moran v. Burbine,
 
 at 422, 106 S.Ct. 1135. The Court stated in pertinent part:
 

 Once it is determined that a suspect’s decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State’s intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law.
 

 Moran v. Burbine,
 
 at 422-23, 106 S.Ct. 1135.
 

 |sIn
 
 State v. Carter,
 
 94-2859 (La.11/27/95), 664 So.2d 367, 370, the defendant was arrested and appeared in court for an initial appearance. At the appearance, the judge appointed a public defender to represent him. Two days later, an officer met with the defendant in jail, advised him of his rights, and asked if he wanted to make a statement. The defendant stated that he understood his rights and agreed to make his statement. He signed a waiver of rights form, which included the right to remain silent and to have an attorney present during questioning, and which notified him that any statements he might make could be used against him at trial. He thereafter made a statement. The defendant’s subsequent motion to suppress the statement was denied.
 
 Id.
 

 In
 
 Carter,
 
 the Louisiana Supreme Court held that where a defendant’s federal and state constitutional right to counsel has attached, but defendant has not asserted or invoked the attached right, he may validly waive his right to counsel during an interrogation, provided the waiver is knowing, intelligent and voluntary. The right to counsel “is the right of the client rather than the attorney, so that it may be waived by the client without counsel’s participation.”
 
 Id.
 
 at 380.
 

 In the instant case, defendant’s father, Mr. French, stated that he had retained counsel for defendant but counsel had not yet met with defendant. Further, unlike either of the aforementioned cases, defendant spoke with his father via telephone before the interview so presumably he was informed by his father that an attorney had been retained. Defendant, however, did not ask to speak to that attorney at any point that day.
 

 Here, defendant is a college graduate who acknowledged that he knew that he did not have to speak to the police without his attorney, who had been retained, present. He admitted that his decision to give a statement was uncoerced. Further, he was aware that his statement could be used against him to secure a conviction |infor indecent behavior with a juvenile. Defendant, however, did not invoke his right to counsel even though he had ample opportunity and gave an inculpatory statement. Here, the trial court did not err in refusing to suppress defendant’s confession.
 
 See, State v. Carter,
 
 00-145 (La.App. 5 Cir. 7/25/00), 767 So.2d 839,
 
 writ denied,
 
 02-227 (La.12/13/02), 831 So.2d 978.
 

 Defendant also argues that the trial judge erred by denying the motion to suppress statements he made to Dr. Malik. He asserts that any inculpatory statements made to Dr. Malik during the course of his psychiatric examination would not have
 
 *1161
 
 been properly admitted at trial as substantive evidence of guilt. With respect to the statements to Dr. Malik, the State argues that this issue is precluded because defendant did not raise this ground for objection in the trial court. The State further argues that it was entitled to have defendant examined by an expert of its choice following defendant’s entry of a plea of not guilty and not guilty by reason of insanity.
 

 We agree with the State that the defendant is precluded from raising this issue, but for a different reason. Here, the record does not contain any evidence of defendant’s alleged inculpatory statements to Dr. Malik. Neither Dr. Malik’s testimony nor his report referred to during the suppression hearings were introduced into the record of this case. The issue presents no grounds for appellate relief pursuant to La.C.Cr.P. art. 921. Further, the issue is moot because the allegedly-objectionable evidence was not introduced into the record.
 
 State v. Smith,
 
 339 So.2d 829 (La.1976), ce
 
 rt. denied, Smith v. Louisiana,
 
 430 U.S. 986, 97 S.Ct. 1685, 52 L.Ed.2d 381 (1977);
 
 State v. Weiland,
 
 562 So.2d 950, 952 (La.App. 5 Cir.1990). The assignment of error lacks merit.
 

 In his second assignment of error, defendant argues that the trial judge erred by denying his motion to quash. Specifically, defendant contends that La. R.S. 14:81, |nas amended in 2006, contains penalty provisions that are “insolubly inconsistent.” Defendant asserts that La. R.S. 14:81(H)(1) is inconsistent with La. R.S. 14:81(H)(2), because § (H)(1) provides for a “with or without” hard labor sentence, but § (H)(2) mandates a hard labor sentence. The State responds that this claim is without merit based on
 
 State v. Ross,
 
 09-431 (La.App. 5 Cir. 11/24/09), 28 So.3d 475, wherein this Court recognized that the aforementioned amendments added a provision allowing a greater penalty when the indecent behavior is perpetrated on a victim under the age of 13.
 

 La. R.S 14:81 was amended by Louisiana Acts 2006, N.o. 103, § 1, and No. 224, § 1, to add a provision allowing a greater penalty where the indecent behavior is on a victim under age 13.
 
 Ross, supra.
 
 In the amended version of La. R.S. 14:81, the statute’s original penalty provision — formerly paragraph C — is now subparagraph (H)(1), and the newly-added penalty provision is subparagraph (H)(2), as follows:
 

 H. (1) Whoever commits the crime of indecent behavior with juveniles shall be fined not more than five thousand dollars, or imprisoned with or without hard labor for not more than seven years, or both, provided that the defendant shall not be eligible to have his conviction set aside or his prosecution dismissed in accordance with the provisions of Code of Criminal Procedure Article 893.
 

 (2) Whoever commits the crime of indecent behavior with juveniles on a victim under the age of thirteen when the offender is seventeen years of age or older, shall be punished by imprisonment at hard labor for not less than two nor more than twenty-five years. At least two years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence.
 

 Here, La. R.S. 14:81(H)(1) and (H)(2) are clear and unambiguous. La. R.S. 14:81(H)(1) provides the general penalty for the offense against persons under the age of eighteen, but 14:81 (H)(2) allows for a harsher penalty for an offender that is seventeen or older, who victimizes a person under the age of 13.
 

 | ^Additionally, at the hearing on the motion to quash, the State introduced a certified copy of Louisiana Acts 2006, No. 103, § 1, which indicates that the legislative intent in amending and reenacting the provisions in question was “to increase crimi
 
 *1162
 
 nal penalties for certain offenses involving persons under the age of thirteen.” Here, the bill of information alleges that the victim, whose date of birth is April 10, 2003, was under the age of 13 on July 5, 2008, the date of the offense. Defendant, whose date of birth is March 20, 1980, was twenty-eight years old at the time of the offense. Accordingly, the statute mandates that § (H)(2) be applied. In light of the foregoing, we find no error in the trial judge’s denial of defendant’s motion to quash the bill of information. This assignment of error lacks merit.
 

 Finally, as is our routine practice pursuant to La.C.Cr.P. art. 920, the record was reviewed for errors patent. Our review reveals no errors that require correction. Based on the foregoing, defendant’s conviction and sentence are affirmed.
 

 AFFIRMED
 

 [1]
 

 . Defendant was alternately found incompetent then restored after inpatient hospitalization for treatment of his mental illness until he was declared to be restored on August 18, 2010.
 

 [2]
 

 . That same day, the defendant also pled guilty to contempt of court "for his attempt to take a plane last night” and the trial judge sentenced defendant to six months in parish prison, consecutive to the two-year sentence.
 

 [3]
 

 .
 
 State v. Crosby,
 
 338 So.2d 584 (La.1976).
 

 [4]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 469-473, 86 S.Ct. 1602, 1625-1627, 16 L.Ed.2d 694 (1966).
 

 [5]
 

 . The United States Supreme Court defined “custodial interrogation” as the "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.”
 
 Miranda v. Arizona,
 
 384 U.S. at 444, 86 S.Ct. at 1612.
 

 [6]
 

 . The "Waiver of Rights” that defendant acknowledged states: "I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure'or coercion of any kind has been used against me.”