Judge Terri F. Love
The State of Louisiana seeks review of the trial court's December 6, 2018 ruling granting defendant's motion to suppress statement. The trial court found that questioning of defendant should have ceased once his cousin, an attorney, informed the police that he was there to serve as defendant's counsel.
We find that the right to counsel is invoked by a defendant. Defendant freely and voluntarily signed the waiver of rights form before giving his statement. Therefore, we find that the trial court erred by granting the motion to suppress statement. We grant the writ, reverse the trial court's ruling, and remand for further proceedings.
PROCEDURAL HISTORY
Defendant, Donovan Alexander, was charged by bill of information with possession with intent to distribute heroin, a violation of La. R.S. 40:966(A)(1) and illegally carrying a weapon with a controlled dangerous substance, a violation of La. R.S. 14:95(E). Mr. Alexander entered a plea of not guilty and filed a motion to suppress evidence, statement, and identification along with a request for a preliminary hearing. The trial court conducted a hearing on Mr. Alexander's motion to suppress statement and preliminary hearing. Following testimony and argument by counsel, the trial court denied Mr. Alexander's motion to suppress evidence and granted his motion to suppress statement. The State's application for supervisory review followed.
FACTUAL BACKGROUND AND TESTIMONY
Andrew Roccaforte, a New Orleans Police Officer assigned to the Task Force Office as DEA, testified he began investigating Mr. Alexander in June of 2016, when he received information from a confidential informant that Mr. Alexander was distributing heroin in the New Orleans metro area. The CI informed Officer Roccaforte that Mr. Alexander stored heroin and firearms at 8243 Curran in New Orleans, but lived in Kenner on Vintage *684 Drive. Extensive surveillance of Mr. Alexander was conducted.
On June 21, 2016, the task force set up surveillance of the Vintage Drive location. The task force acquired consent to search that location. Two pounds of marijuana, a firearm, and Carisoprodol pills were seized from the Vintage Drive location, and Mr. Alexander was arrested.
Following Mr. Alexander's arrest, but on the same day, Officer Roccaforte and a team of agents proceeded to 8243 Curran Boulevard, a suspected "stash" house for Mr. Alexander. Dontrell Minor, a female friend of Mr. Alexander, opened the door and was extremely cooperative. Ms. Minor consented to the search of the residence. Ms. Minor admitted that Mr. Alexander stored narcotics and a firearm in the bottom dresser drawer in her bedroom. When the drawer was removed, Officer Roccaforte recovered a loaded firearm and an STP oil can with a false bottom and a secret compartment. When the STP can's false bottom was removed, Officer Roccaforte recovered about eight grams of heroin. Packaging material and a digital scale were also recovered from the bedroom. As a result, an arrest warrant was prepared two days later for possession with intent to distribute heroin and possession of a firearm with a controlled dangerous substance for Mr. Alexander from Orleans Parish.
Special Agent Joseph Blackledge, DEA, testified that he was the agent who arrested Mr. Alexander. Mr. Alexander was informed of his rights in accordance with Miranda following his arrest and once again before he was interviewed. Mr. Alexander signed a form indicating he waived his rights and gave a statement. Agent Blackledge summarized Mr. Alexander's statement as follows:
As he was detained at Kenner Police Headquarters they had some other investigators that did a search of the Curran residence. And during the recorded statement I told Mr. Alexander that that house was searched and they recovered some heroin and a firearm I believe. At that time he said it was his. And that he didn't want the girl that lived there to be blamed for anything.
In response to defense counsel's questions, Agent Blackledge stated he did not recall anyone by the name of Dwayne Burrell coming to the Kenner Police Department. Agent Blackledge stated if he had known Mr. Alexander's lawyer wanted to be present, he would have stopped the interview and accommodated the lawyer.
Following the testimony of Agent Blackledge, the trial court continued the hearing for the testimony of Attorney Dwayne Burrell. Attorney Burrell testified that he is Mr. Alexander's cousin and an attorney. Attorney Burrell received a call from Mr. Alexander's girlfriend informing him that the police were at Mr. Alexander's apartment. Attorney Burrell proceeded to the apartment in Kenner. Upon arrival, Attorney Burrell spoke with Mr. Alexander's girlfriend. The police were at the apartment searching the residence. Attorney Burrell attempted to stop the search, but the police informed him that drugs were found on the premises and Mr. Alexander was detained. Attorney Burrell informed an officer he wanted to speak with Mr. Alexander and that Mr. Alexander was not going to make any statements. The officers informed Attorney Burrell that Mr. Alexander was going to be booked and they were going to bring him to Gretna. Attorney Burrell was told he could speak with Mr. Alexander in Gretna. Attorney Burrell could not identify the officer he spoke with and stated there were several different officers from different agencies present. Attorney Burrell was not told that the officers were going to interview Mr. Alexander in Kenner.
*685 When questioned by the State, Attorney Burrell stated he had represented Mr. Alexander in previous civil matters, but not criminal, although he was currently representing Mr. Alexander in a criminal matter in Jefferson Parish. When asked whether Mr. Alexander retained him to defend him in the matter sub judice , Attorney Burrell said he is Mr. Alexander's cousin and is always his attorney.
The trial court found probable cause, denied the motion to suppress evidence, and granted the motion to suppress the statement. With regard to the statement, the trial court found:
The officers specifically ... said he knew nothing about the defendant's cousin who is an attorney appearing at headquarters on his behalf. He said he would have allowed the attorney to come into the interview room had he known he was there.
Ultimately, the Court has to consider the State being treated as a single entity and any of the officers who were being-who were involved and who were present as being alerted that there shouldn't be any questioning of this gentleman.
MOTION TO SUPPRESS
The State contends that the trial court erred in granting Mr. Alexander's motion to suppress the statement because an attorney was not denied access to Mr. Alexander prior to his providing a statement.
It is well established that that before the State is allowed to introduce a confession into evidence, "it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises." La. R.S. 15:451. See also La. C.Cr.P. art. 703(D) ; State v. Holmes , 06-2988 (La. 12/2/08), 5 So.3d 42 ; State v. Simmons , 443 So.2d 512, 515 (La. 1983). The Louisiana Supreme Court described the process of determining whether a statement was freely and voluntarily given as follows:
If a statement is a product of custodial interrogation, the State must make a threefold showing: first, that the person was advised before questioning of his right to remain silent; second, that the person was told that any statement he makes may be used against him; and, third that the person was counseled that he has a right to an attorney, either retained or appointed. Miranda v. Arizona , 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). When claims of police misconduct are raised, the State must specifically rebut the allegations. State v. Vessell , 450 So.2d 938, 942-943 (La.1984). A trial court's finding as to the free and voluntary nature of a statement carries great weight and will not be disturbed unless the evidence fails to support the trial court's determination. State v. Benoit , 440 So.2d 129, 131 (La.1983). Credibility determinations lie within the sound discretion of the trial court and its rulings will not be disturbed unless clearly contrary to the evidence. Vessell , 450 So.2d at 943. When deciding whether a statement is knowing and voluntary, a court considers the totality of circumstances under which it is made, and any inducement is merely one factor in the analysis. State v. Lavalais , 685 So.2d at 1053 ; State v. Lewis , 539 So.2d 1199, 1205 (La.1989).
Holmes , 06-2988, p. 34, 5 So.3d at 67-68.
When faced with a similar issue as the case sub judice , the United States Supreme Court holding in Moran v. Burbine , 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1985), found defendant had validly waived her right to counsel. In Burbine , *686 the U.S. Supreme Court summarized the issue as follows:
After being informed of his rights pursuant to Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and after executing a series of written waivers, respondent confessed to the murder of a young woman. At no point during the course of the interrogation, which occurred prior to arraignment, did he request an attorney. While he was in police custody, his sister attempted to retain a lawyer to represent him. The attorney telephoned the police station and received assurances that respondent would not be questioned further until the next day. In fact, the interrogation session that yielded the inculpatory statements began later that evening. The question presented is whether either the conduct of the police or respondent's ignorance of the attorney's efforts to reach him taints the validity of the waivers and therefore requires exclusion of the confessions.
Id. at 415-16 (emphasis added). The U.S. Supreme Court analyzed the requirements of Miranda and stated:
Moreover, problems of clarity to one side, reading Miranda to require the police in each instance to inform a suspect of an attorney's efforts to reach him would work a substantial and, we think, inappropriate shift in the subtle balance struck in that decision. Custodial interrogations implicate two competing concerns. On the one hand, "the need for police questioning as a tool for effective enforcement of criminal laws" cannot be doubted. Schneckloth v. Bustamonte , 412 U.S. 218, 225, 93 S.Ct. 2041, 2046, 36 L.Ed.2d 854 (1973). Admissions of guilt are more than merely "desirable," UnitedStates v. Washington , 431 U.S. at 186, 97 S.Ct. at 1818 ; they are essential to society's compelling interest in finding, convicting, and punishing those who violate the law. On the other hand, the Court has recognized that the interrogation process is "inherently coercive" and that, as a consequence, there exists a substantial risk that the police will inadvertently traverse the fine line between legitimate efforts to elicit admissions and constitutionally impermissible compulsion. New York v. Quarles , supra, 467 U.S. at 656, 104 S.Ct. at 2631. Miranda attempted to reconcile these opposing concerns by giving the defendant the power to exert some control over the course of the interrogation. Declining to adopt the more extreme position that the actual presence of a lawyer was necessary to dispel the coercion inherent in custodial interrogation, see Brief for American Civil Liberties Union as Amicus Curiae in Miranda v. Arizona , O.T. 1965, No. 759, pp. 22-31, the Court found that the suspect's Fifth Amendment rights could be adequately protected by less intrusive means. Police questioning, often an essential part of the investigatory process, could continue in its traditional form, the Court held, but only if the suspect clearly understood that, at any time, he could bring the proceeding to a halt or, short of that, call in an attorney to give advice and monitor the conduct of his interrogators.
The position urged by respondent would upset this carefully drawn approach in a manner that is both unnecessary for the protection of the Fifth Amendment privilege and injurious to legitimate law enforcement. Because, as Miranda holds, full comprehension of the rights to remain silent and request an attorney are sufficient to dispel whatever coercion is inherent in the interrogation process, a rule requiring the police to inform the suspect of an attorney's efforts to contact him would contribute *687 to the protection of the Fifth Amendment privilege only incidentally, if at all. This minimal benefit, however, would come at a substantial cost to society's legitimate and substantial interest in securing admissions of guilt. Indeed, the very premise of the Court of Appeals was not that awareness of Ms. Munson's phone call would have dissipated the coercion of the interrogation room, but that it might have convinced respondent not to speak at all. [Burbine v. Moran ] 753 F.2d [178] at 185 [ (1985) ]. Because neither the letter nor purposes of Miranda require this additional handicap on otherwise permissible investigatory efforts, we are unwilling to expand the Miranda rules to require the police to keep the suspect abreast of the status of his legal representation .
Burbine , 475 U.S. 412, 426-27, 106 S.Ct. 1135, 1143-44, 89 L.Ed.2d 410 (1986) (emphasis added).
Similarly, in State v. French , 11-576, pp. 4-5 (La. App. 5 Cir. 11/29/11), 79 So.3d 1155, 1158, the Fifth Circuit Court of Appeal stated:
Before an inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his Miranda rights, that he voluntarily and intelligently waived those rights, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducement, or promises. State v. Loeb , 09-341, p. 11 (La.App. 5 Cir. 2/23/10), 34 So.3d 917, 924-25, writ denied , 10-681 (La. 10/15/10), 45 So.3d 1110, (citing La. R.S. 15:451 ); State v. Blank , 04-0204, pp. 9-10 (La. 4/11/07), 955 So.2d 90, 103, cert. denied , 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007).
The critical factor in a knowing and intelligent waiver is whether the defendant was able to understand the rights explained to him and voluntarily gave the statement. Loeb , 09-341 at 11-12, 34 So.3d at 925. Testimony of the interviewing police officer alone may be sufficient proof that a defendant's statements were freely and voluntarily given. State v. Mackens , 35,350, p. 13 (La.App. 2 Cir. 12/28/01), 803 So.2d 454, 463, writ denied , 02-0413 (La. 1/24/03), 836 So.2d 37.
In French , the defendant contended that his father's written and verbal assertion to the police that the father had retained counsel for defendant was sufficient to invoke defendant's right to counsel. French , 11-576, p. 8, 79 So.3d at 1159. The French Court relied on Burbine and found the following:
In State v. Carter , 94-2859 (La. 11/27/95), 664 So.2d 367, 370, the defendant was arrested and appeared in court for an initial appearance. At the appearance, the judge appointed a public defender to represent him. Two days later, an officer met with the defendant in jail, advised him of his rights, and asked if he wanted to make a statement. The defendant stated that he understood his rights and agreed to make his statement. He signed a waiver of rights form, which included the right to remain silent and to have an attorney present during questioning, and which notified him that any statements he might make could be used against him at trial. He thereafter made a statement. The defendant's subsequent motion to suppress the statement was denied. Id.
In Carter , the Louisiana Supreme Court held that where a defendant's federal and state constitutional right to counsel has attached, but defendant has not asserted or invoked the attached right, he may validly waive his right to *688 counsel during an interrogation, provided the waiver is knowing, intelligent and voluntary. The right to counsel "is the right of the client rather than the attorney, so that it may be waived by the client without counsel's participation." Id. at 380.
In the instant case, defendant's father, Mr. French, stated that he had retained counsel for defendant but counsel had not yet met with defendant. Further, unlike either of the aforementioned cases, defendant spoke with his father via telephone before the interview so presumably he was informed by his father that an attorney had been retained. Defendant, however, did not ask to speak to that attorney at any point that day.
Id. at p. 9, 79 So.3d at 1160 (emphasis added).
Following the precedent of Burbine and guidance of French , we find that the trial court erred in granting Mr. Alexander's motion to suppress the statement. Mr. Alexander was advised of his rights in accordance with Miranda , voluntarily waived his rights, and signed a form reflecting same. Then, Mr. Alexander provided a statement.
DECREE
For the above-mentioned reasons, we find that the trial court erred by granting Mr. Alexander's motion to suppress statement, as he freely and voluntarily gave the statement. As such, we reverse the judgment of the trial court and remand the matter for further proceedings.
WRIT GRANTED
McKAY, C.J., CONCURS IN RESULT